Sucesión de José Del Coro Lugo, compuesta por los herederos Javier Pollock Pérez, José Encarnación del Coro Ukura y Elizabeth López Charles; Lydia María Fernández Díaz, en capacidad de cónyuge supérstite, y Alicia López Martínez, en su carácter de albacea testamentaria de la Sucesión de José Del Coro Lugo, demandantes y recurrentes, *v.* Hon. Juan Agosto Alicea, Secretario de Hacienda del Estado Libre Asociado de Puerto Rico, demandado y recurrido.

*Número:* RE-89-144          *Resuelto:* 26 de febrero de 1992

*Edwin González Torres* y *Fernando Pérez Colón*, de *Lespier, Muñoz Noya y Ramírez*, abogados de los recurrentes; *Jorge E. Pérez Díaz, Procurador General, María Adaljisa Dávila, Procuradora General Auxiliar*, y *Juan R. Deliz Román, Procurador General Auxiliar*, abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR ALONSO ALONSO emitió la opinión del Tribunal.

La controversia central ante nos consiste en determinar cómo valorar acciones de una corporación familiar que no eran vendidas en bolsas de valores reconocidas para propósitos de la Ley de Contribuciones sobre Caudales Relictos y Donaciones de Puerto Rico vigente para el 16 de abril de 1985.

I

Los hechos del caso no están en controversia.

Don José Del Coro Lugo, único accionista de Río Piedras Commercial, Inc., falleció el *16 de abril de 1985*. En su caudal hereditario constaban aproximadamente 4,976.4 acciones comunes de dicha corporación, las cuales no eran objeto de transacciones en el mercado o en bolsas de valores reconocidas.

Entre los activos de Río Piedras Commercial, Inc. había una partida denominada "Cash Value of Life Insurance" con valor en efectivo (*cash surrender value*) de trescientos veintisiete mil cuatrocientos veinticinco dólares ($327,425) correspondiente a una póliza de seguro de vida sobre el

causante del tipo *key man insurance*.[1] Dicha póliza fue obtenida dentro del curso normal de sus negocios; la corporación pagó las primas y era la única beneficiaria designada.

Al rendir la planilla de contribución sobre caudales relictos, el albacea utilizó el antes mencionado valor según éste constaba en el estado de situación más cercano a la fecha de la muerte del causante (*28 de febrero de 1985*) el cual fue preparado por la compañía de contadores públicos autorizados Touche Ross & Co. A diferencia del valor en efectivo de la póliza, el valor nominal (*face value*) de ésta que sería recibido por la beneficiaria —Río Piedras Commercial, Inc.— a la fecha del fallecimiento de Don José Del Coro Lugo era de ochocientos mil dólares ($800,000) según surge de la póliza.

La práctica administrativa del Secretario de Hacienda ( en adelante el Secretario) ha sido considerar las pólizas de seguro de vida *key man insurance* como parte de los activos de capital cuando una corporación es su propietaria y beneficiaria. Siguiendo esa práctica, el 18 de marzo de 1988 el Secretario le cursó a la Sucesión de José Del Coro Lugo (en adelante Sucesión) una "Notificación Final y Requerimiento de Pago" por deficiencias contributivas de herencia, ascendentes a ciento ochenta y dos mil quinientos treinta y cuatro dólares con cuarenta y seis centavos ($182,534.46), más intereses hasta el 30 de abril de 1988 para un total de doscientos veinticuatro mil quinientos sesenta y ocho dólares con trece centavos (224,568.13). Basó dicha deficiencia *en su tasación* de las acciones comunes del Río Piedras Commercial, Inc. Distinto a la Sucesión, el

---

[1] Un seguro del tipo *key man insurance* en una corporación familiar tiene el propósito de proteger a ésta de la pérdida o merma en la efectividad de sus actividades que puedan surgir por la muerte de un accionista o funcionario que es clave en el funcionamiento del negocio. G. Meléndez Carrucini, *Manual de Contribuciones sobre Caudales y Donaciones*, San Juan, Inst. Contribuciones de Puerto Rico, 1969, pág. 172.

Secretario valoró la póliza en ochocientos mil dólares ($800,000). Es decir, en vez de aceptar el valor en efectivo (*cash value*) de la póliza reflejado en el estado financiero más próximo a la muerte del causante, utilizó su valor par (*face value*).

La Sucesión solicitó reconsideración de la deficiencia notificada, la cual fue denegada por el Secretario. Posteriormente, la Sucesión recurrió al Tribunal Superior, Sala de San Juan. Dicho foro (Hon. Arnaldo López Rodríguez, Juez) concluyó que el Secretario actuó en conformidad con la práctica administrativa al ajustar la partida de activo correspondiente a la póliza de vida, para que reflejara su valor real a la fecha de la muerte del causante.

Inconforme con dicho dictamen, la Sucesión acude ante nos alegando lo siguiente: (1) la inaplicabilidad de la Sec. 33(a) de la Ley de Contribuciones sobre Caudales Relictos y Donaciones de Puerto Rico, 13 L.P.R.A. sec. 5033(a), en la valoración de las acciones; (2) la aplicabilidad taxativa de la Sec. *33(b)(2)* de la Ley de Contribuciones sobre Caudales Relictos y Donaciones de Puerto Rico, 13 L.P.R.A. sec. 5033(b)(2), que considera la valoración de acciones y valores corporativos que *no son vendidos en bolsas de valores reconocidas*; (3) que las enmiendas introducidas en 1983 a la Sec. 33(b)(2) de la Ley de Contribuciones sobre Caudales Relictos y Donaciones de Puerto Rico, *supra*, y su correspondiente reglamento alteraron el método de valoración de las acciones, y (4) la necesidad de considerar la pérdida económica y de plusvalía sufrida por la corporación por el fallecimiento de Don José Del Coro Lugo en la revaluación de las acciones.

## II

Para adjudicar esta controversia novel se requiere interpretar la Sec. 33 de la Ley Núm. 167 de 30 de junio de 1968 (13 L.P.R.A. sec. 5033), a la luz de la enmienda que sufrió

por el Art. 4 de la Ley Núm. 1 de 4 de enero de 1983, conocida como la Ley de Contribuciones sobre Caudales Relictos y Donaciones de Puerto Rico.

La Sec. 33(b)(2), *supra*, dispone la forma de valoración de las acciones y valores corporativos que no son vendidos en bolsas reconocidas de valores.

Dicha disposición lee como sigue:

*Sec. 5033. Valoración de propiedad incluible en el caudal relicto bruto*

. . . . . . . .

(b) *Valoración de acciones y valores corporativos.—*

. . . . . . . .

(2) *Los no vendidos en bolsas de valores reconocidas.—* Su valor será el conocido en el mercado. *De no ser éste conocido se tomará su valor en los libros de contabilidad de la corporación emisora según reflejado en el estado de situación de la corporación al cierre normal de operaciones más cercano de la fecha de muerte del causante, preparado de acuerdo con principios de contabilidad generalmente aceptados y certificados por un contador público autorizado.* Se le ofrecerá la opción al administrador, albacea o fideicomisario para determinar el valor a base de valorar los activos de la corporación más la plusvalía de ésta deduciendo su pasivo y el valor de las acciones preferidas, si las hubiese, y dividiendo el remanente de la valoración por el número de acciones comunes para determinar el valor de cada acción común. En el caso de un negocio individual o sociedad que representan un negocio de familia se usará un método similar para valorar el negocio pero valorando los activos como una unidad. (Énfasis suplido y en el original.) 13 L.P.R.A. sec. 5033(b)(2).

Antes de la enmienda de 1983, la facultad del contribuyente para utilizar el valor en los libros de contabilidad de la corporación emisora de las acciones estaba sujeta a que a juicio del Secretario *"éstos reflejaran la verdad"*. En este sentido, si el Secretario entendía que el valor en los libros de la corporación emisora no reflejaba la verdad, éste tenía facultad para valorar las acciones o valores conforme al método alterno provisto por el texto de la ley. Bajo dicho método se requiere valorar la propiedad de la corporación

incluyendo la plusvalía. De esta cantidad se deduce el total de pasivos y acciones preferidas, y el remanente se divide por el número de acciones comunes.

Si aún así, la valoración fuere a todas luces irrazonable, el valor se podría determinar aplicando todos aquellos factores que mediante reglamento se establecieran.([2])

La Sucesión sostiene que la actual Sec. 33(b)(2), *supra*, no faculta al Secretario ni al contribuyente, unilateralmente y en contravención a los métodos alternos dispuestos por dicha sección, a realizar ajustes en la valoración de los activos de la corporación. Sostiene, además, que el propósito legislativo de la enmienda de 1983 fue precisamente evitar este tipo de actuación. A su entender, la referida enmienda es clara y taxativa al concederles la opción de tomar el valor en los libros de contabilidad de Río Piedras Commercial, Inc., según se refleja en el estado de situación de la corporación al cierre normal de operaciones más cercano de la fecha de muerte del causante, preparado de acuerdo con principios de contabilidad generalmente aceptados y certificados por un contador público autorizado. Argumenta que cuando la ley es clara no admite interpretación. Concluye que si la tesis del Secretario fuese

---

([2]) El texto de la Sec. 33(b)(2) de la Ley de Contribuciones sobre Caudales Relictos y Donaciones de Puerto Rico, 16 L.P.R.A. sec. 5033(b)(2), antes de la enmienda de 1983 era el siguiente:

"*Sec. 5033. Valoración de propiedad incluible en el caudal relicto bruto*

"(b) *Valoración de acciones y valores corporativos:*

"(2) *Los no vendidos en bolsas de valores reconocidas.*— Su valor será el conocido en el mercado. De no ser éste conocido se tomará su valor en los libros de contabilidad de la corporación emisora *si éstos reflejaren la verdad. Si dichos libros no reflejaren la verdad,* el valor se determinará valorando la propiedad de la corporación más la plusvalía de ésta, deduciendo su pasivo y el valor de las acciones preferidas, si las hubiere, y dividiendo el remanente de la valoración por el número de acciones comunes. El resultado de esta operación producirá el valor neto de cada acción común. Cuando utilizando las formas anteriormente indicadas la valoración obtenida fuere a todas luces irrazonable, el valor se determinará aplicando todos aquellos factores que por reglamento determine el Secretario." (Énfasis suplido y en el original.) 13 L.P.R.A. ant. sec. 5033(b)(2).

correcta, entonces no hubiese habido necesidad de enmendar la ley.

Por su parte el tribunal de instancia resolvió que ni la ley ni el reglamento sostienen tal posición. Aclaró que el método de valoración usado por la Sucesión es correcto y válido, pero le reconoció discreción al Secretario para ajustarlo, de forma tal que refleje su verdadero valor para los fines contributivos una vez la corporación recibe el importe de la póliza.

Por último, señaló que ante el caso extraordinario de este tipo de seguro de vida —cuyo beneficiario es la corporación y su valor nominal no es redimible hasta tanto ocurra la muerte del asegurado, una vez acaecida ésta, el valor de los activos de capital, y por ende de las acciones corporativas— se van a afectar, por lo que procede el ajuste correspondiente cuando los referidos estados fueron preparados antes de la muerte del asegurado.

## IV

Incidió el foro de instancia en su dictamen. Veamos por qué.

Con anterioridad a las enmiendas introducidas en 1983 se creaban numerosas controversias innecesarias por el estado de derecho vigente que facultaba al Secretario a valorar los bienes de la corporación si entendía que el valor en los libros de contabilidad no reflejaban la verdad.

Así lo expresó taxativamente la ex Secretaria de Hacienda, Carmen Ana Culpeper, en su ponencia sobre el Proyecto de la Cámara 689 que luego se convirtió en la ley que estamos interpretando. Ante la Comisión de Hacienda de dicho Cuerpo expresó entonces:

El proyecto propone otros alivios y beneficios de importancia entre los cuales se encuentran los siguientes:

*Número 1: Para propósitos del cómputo del caudal relicto bruto se dispone que para la valoración de acciones de capital*

*que no son vendidas en bolsas de valores reconocidas y cuando se desconozca su valor en el mercado, se tomará en cuenta su valor en los libros de la corporación emisora según reflejado en el estado de situación de la corporación preparado de acuerdo con principios de contabilidad generalmente aceptados y certificado por un contador público autorizado.*

*El propósito de esta enmienda es evitar las numerosas controversias creadas por el estado de derecho actual bajo el cual, en la valoración de acciones de corporaciones familiares, se toma en cuenta el valor en los libros solamente si el Secretario de Hacienda o sus delegados opinan que dicho valor refleja la realidad.* (Énfasis suplido y en el original.) Véase Memorando de 1ro de diciembre de 1982 a la Comisión de Hacienda de la Cámara de Representantes, Historial Legislativo del P. de la C. 689 de 9 de diciembre de 1982, pág. 4.

De igual forma se expresó la Comisión de Hacienda de la Cámara de Representantes en su memorial explicativo del P. de la C. 689, recomendando a dicho Cuerpo la aprobación de la enmienda. Dice así dicho memorial:

En la Ley de Contribuciones Sobre Caudales Relictos y Donaciones, *bajo el método de valoración alterna que proveía la sección 33(b)(2) para las acciones y valores corporativos no vendidos en bolsas de valores, se usaba el valor en los libros de contabilidad de la corporación emisora solamente si estos reflejan la verdad. Más aún, si el Secretario de Hacienda consideraba que esas valoraciones no eran razonables, podía entonces hacer su propia determinación de valores.*

La aplicación de esta disposición resultó en la creación de controversias ya que aunque los valores en los libros estuviesen correctos en base a los principios de contabilidad, estos no se aceptaban. La frase "si los libros reflejan la verdad" resultó no tener valor alguno. *Por lo tanto, al enmendar esta sección, se permite el uso de valoración alterna de los libros de contabilidad de la corporación emisora que sean preparados de acuerdo con principios de contabilidad generalmente aceptados y certificados por un Contador Público Autorizado.* (Énfasis suplido.)

El P. de la C. 689, aprobado por la Cámara de Representantes, fue adoptado íntegramente por el Senado de Puerto Rico según le fuera referido por dicho Cuerpo. Véase XXXVI (Núm. 17) Diario de Sesiones de la Asamblea Legislativa (Senado), 11 de diciembre de 1982.

La enmienda de 1983 expresamente eliminó de la Sec. 33(b)(2), *supra*, el texto anterior que leía "[*s*]*i dichos libros no reflejaren la verdad, el valor se determinará valorando la propiedad ...*". (Énfasis suplido.) 13 L.P.R.A. ant. sec. 5033.

También eliminó la alternativa que tenía el Secretario de valorar estas acciones mediante la aplicación de otros factores determinados mediante reglamento.

Al aprobar la Ley Núm. 1, *supra*, en 1983, el legislador tenía además otras preocupaciones relacionadas con el objetivo liberalizante que se le quería introducir a la Ley de Contribuciones sobre Caudales Relictos y Donaciones de Puerto Rico. Véase el informe ofrecido por el Presidente de la Comisión de Hacienda a la Cámara de Representantes.

Específicamente: (1) se consideraba la anterior Ley de Contribuciones sobre Caudales Relictos y Donaciones "sumamente dañina" a la economía de Puerto Rico debido a que se vislumbraba como un impedimento al desarrollo económico del país; (2) la ley promovía la fuga de capital hacia el exterior, y (3) *que en muchos casos había llevado a negocios e instituciones del país, que son propiedad de accionistas y socios puertorriqueños, al fracaso o habían tenido que ser vendidas a capital extranjero.* Memorando, *supra.*

Al aprobarse la Ley Núm. 1, *supra*, uno de los propósitos que tuvo el legislador fue evitar precisamente el resultado adverso que por años se venía sintiendo en la economía de Puerto Rico a consecuencia de la tributación desproporcionada sobre los caudales relictos.

## V

No sólo la intención legislativa es clara, sino que también el lenguaje de la Sec. 33(b)(2), *supra*, según enmendada, es diáfano.

La fuente primaria del derecho contributivo es la

ley que impone la contribución de que se trate, y cuando la propia letra de la ley contributiva cubre el asunto sin incertidumbre, ella dispone de la controversia. G. Meléndez Carrucini, *Fuentes del Derecho Tributario*, XVI (Núm. 2) Rev. Jur. U.I.A. 305 (1982).

■ La Sec. 33(b)(2), *supra*, le ofrece al *administrador, albacea* o fideicomisario dos (2) alternativas u opciones para valorar acciones y valores incluidos en el caudal relicto bruto, cuando éstos no son vendidos en bolsas de valores reconocidas: (1) tomar el valor en los libros de contabilidad de la corporación emisora según se refleja en el estado de situación de la corporación al cierre normal de operaciones más cercano a la fecha de la muerte del causante, preparado de acuerdo con principios de contabilidad generalmente aceptados y certificados por un contador público autorizado (como se hizo en el caso ante nos), o (2) determinar el valor a base de valorar los activos de la corporación más la plusvalía de ésta deduciendo su pasivo y el valor de las acciones preferidas, si las hubiese, y dividiendo el remanente de la valoración por el número de acciones comunes para determinar el valor de cada acción común. 2 *Puerto Rico Taxes* Sec. 85, 305; 2 *Puerto Rico Taxes* Sec. 89002 (1986); 2 *Puerto Rico Tax Rep*. Sec. 5033, Párr. 95-044 (1990); A. Vázquez González, *La nueva ley sobre contribuciones sobre caudales relictos y donaciones*, San Juan, 1986.

La opción de escoger una de estas dos alternativas se le concede al administrador, albacea o fideicomisario, y *no al Secretario*. Al ejercer dicha opción, el albacea no puede tomar uno de los activos incluidos en el estado de situación de la corporación emisora de las acciones y valorarlo separadamente, pues estaría alterando un estado de situación debidamente certificado por un contador público autorizado y afectando toda la valoración de los bienes corporativos. Tal cosa tampoco la puede hacer el Secretario.

No sólo la Sec. 33(b)(2), *supra*, es diáfana, sino que el reglamento que adoptó el Secretario para instrumentarla dispone un mecanismo *similar* al contenido por la ley para valorar acciones y valores no vendidos en bolsas de valores reconocidas. *Dicho reglamento tampoco concede facultad al Secretario para realizar la valorización de un activo del estado de situación separadamente.* Reglamento Núm. 3548 de 9 de diciembre de 1987, Sec. 1.33(b)–1(c)(2).[3]

■ De la letra clara de la ley y de su reglamento, así como de su intención legislativa surge con meridiana claridad que la Sec. 33(b)(2), *supra*, tiene el propósito de evitar *controversias y dilaciones* innecesarias resultantes de los innumerables ajustes y revaluaciones realizadas por el Secretario. Como bien reconoce el Estado en su comparecencia ante nos, "[e]l propósito [de la enmienda] fue agilizar y facilitar un proceso de valoración *que de por sí era arduo, tedioso y complicado*". (Énfasis suplido.) Alegato de la parte recurrida, pág. 12.

El esquema legal vigente brinda *certeza* tanto al contribuyente como al Secretario sobre los métodos de valoración. Ello beneficia al Estado y al contribuyente. Para que un sistema fiscal —que de por sí es altamente técnico— funcione adecuadamente, él debe brindar al contribuyente un grado de confiabilidad y de certeza que le permita a éste conocer *con razonabilidad las "reglas del juego".* Lo contrario menoscaba la fe de los contribuyentes en el sistema mismo.

## V

Apliquemos lo expuesto anteriormente al caso de autos.

---

[3] Cabe señalar que nuestra Ley de Contribuciones sobre Caudales Relictos y Donaciones de Puerto Rico actual *no es análoga* al Código de Rentas Internas federal. Por el contrario, existen diferencias sustanciales, por lo cual dicha ley y la reglamentación y jurisprudencia federales no pueden ser utilizadas por analogía.

Habiendo escogido el albacea, para valorar la póliza de *key man insurance* —conforme lo dispone la Sec. 33(b)(2), *supra*— la opción que le permite utilizar el valor en los libros de la corporación emisora, según reflejado en el último estado de situación debidamente certificado por un contador público autorizado, no podía el Secretario revalorar posteriormente dicha póliza o activo.

Una interpretación distinta a la que hoy hacemos de la Sec. 33(b)(2), *supra*, según fue enmendada, violaría la letra clara de la ley, daría al traste con el propósito legislativo de la enmienda introducida en el 1983 y restablecería el estado de derecho que precisamente el legislador quiso eliminar.[5]

Finalmente, no estamos ante una situación que podría propiciar la evasión contributiva. Es todo lo contrario. Sostener que el Secretario tiene discreción en casos como el presente para requerir que se tribute a base de la revaluación que éste haga del valor en los libros de esas acciones por el producto neto de la póliza, propicia la fuga de capital local. Así lo entendió el legislador expresamente.

---

[5] Es importante destacar que con posterioridad a la muerte del aquí causante, José del Coro Lugo, la Asamblea Legislativa aprobó la Ley Núm. 11 de 24 de julio de 1985 mediante la cual se establece que los certificados de acciones emitidos por corporaciones domésticas y las cantidades pagaderas por contratos de seguro de vida de un causante residente de Puerto Rico son deducibles del caudal relicto bruto. Específicamente, en lo pertinente, la referida ley dispone que:

"(a) Será deducible del caudal relicto bruto de un causante residente de Puerto Rico, el valor de la propiedad localizada en Puerto Rico (según se define y enumera en esta sección), a la fecha de su fallecimiento, excepto según se dispone en la Sección 5056

"(b) Para fines de esta sección el término 'propiedad localizada en Puerto Rico' significa e incluirá lo siguiente:

"(2) Los certificados de acciones emitidos por corporaciones domésticas ....

"(5) Las cantidades pagaderas por razón de contratos de seguro sobre la vida de un residente de Puerto Rico." 1985 Leyes de Puerto Rico 700–701.

No obstante lo anterior, la norma esbozada en el caso de autos, en torno a los métodos de valoración de acciones y valores corporativos sin vender en bolsas de valores reconocidas, es de aplicación a aquellos casos en que las mismas no sean deducibles del caudal relicto bruto por no cumplir con lo requerido por la Ley Núm. 11, *supra*.

## VI

En vista de lo aquí dispuesto, es innecesario considerar el planteamiento de los recurrentes a los efectos de que incidió el foro de instancia al no considerar en la valoración de las acciones la pérdida económica y de plusvalía que representó para la corporación el fallecimiento del causante.

Por los fundamentos expuestos, *se dictará sentencia que revoque la del tribunal de instancia.*

El Juez Asociado Señor Negrón García emitió una opinión disidente, a la cual se une el Juez Asociado Señor Rebollo López.

— O —

Opinión disidente del Juez Asociado Señor Negrón García, a la cual se une el Juez Asociado Señor Rebollo López.

Disentimos. El beneficio neto (*proceeds*) de una póliza de seguro de vida del tipo *key man insurance*[1] recibido por una corporación íntima (dueña y beneficiaria de la póliza), debe considerarse como un activo al valorar sus acciones. Nos explicamos.

## I

La Sucesión José Del Coro Lugo sostiene que la Sec. 33 de la Ley de Contribuciones sobre Caudales Relictos y Donaciones de Puerto Rico, 13 L.P.R.A. sec. 5033, según en-

---

[1] "Protección de un establecimiento comercial contra las pérdidas financieras causadas por la muerte o inhabilitación de un miembro vital de la empresa. Un medio de proteger un negocio de los resultados adversos de la pérdida de individuos con destrezas administrativas especiales o de experiencia." (Traducción nuestra.) L.E. Davids, *Dictionary of Insurance*, 6ta ed. rev., Nueva Jersey, Ed. Rowman y Allanheld, 1983, pág. 171.

mendada en 1983,[2] no faculta al Secretario de Hacienda ni al contribuyente, unilateralmente y en contradicción de los métodos alternos provistos por el estatuto, a realizar ajustes en la valoración de los activos de la corporación emisora. Añade que el propósito legislativo de la enmienda fue precisamente evitar este tipo de controversia. A su entender, la referida enmienda es clara y taxativa al concederle la opción de tomar el valor en los libros de contabilidad de Río Piedras Commercial, Inc., según quedó reflejado en el estado de situación de la corporación al cierre normal de operaciones más cercano de la fecha de muerte del causante, preparado de acuerdo con principios de contabilidad generalmente aceptados y certificados por un contador público autorizado. Argumenta que cuando la ley es clara no admite interpretación. Concluye que si la tesis del Secretario de Hacienda fuese correcta, entonces no hubiese habido necesidad de enmendar la ley.

Por su parte, el tribunal sentenciador (Hon. Arnaldo López Rodríguez, Juez) resolvió que ni la ley ni el reglamento sostienen tal posición. Aclaró que el método de valoración usado por la Sucesión es correcto y válido, pero le reconoció discreción al Secretario de Hacienda para ajustarlo, de forma tal que refleje su verdadero valor para los fines con-

---

[2] *"Sec. 5033. Valoración de propiedad incluible en el caudal relicto bruto*

*"(b) Valoración de acciones y valores corporativos.—*

"(2) Los no vendidos en bolsas de valores reconocidas.— Su valor será el conocido en el mercado. *De no ser éste conocido se tomará su valor en los libros de contabilidad de la corporación emisora según reflejado en el estado de situación de la corporación al cierre normal de operaciones más cercano de la fecha de muerte del causante, preparado de acuerdo con principios de contabilidad generalmente aceptados y certificados por un contador público autorizado.* Se le ofrecerá la opción al administrador, albacea o fideicomisario para determinar el valor a base de valorar los activos de la corporación más la plusvalía de ésta deduciendo su pasivo y el valor de las acciones preferidas, si las hubiese, y dividiendo el remanente de la valoración por el número de acciones comunes para determinar el valor de cada acción común. En el caso de un negocio individual o sociedad que representan un negocio de familia se usará un método similar para valorar el negocio pero valorando los activos como una unidad." (Énfasis en el original suprimido y énfasis suplido.)

tributivos una vez la corporación recibe el importe de la póliza.

Señaló que ante el caso *extraordinario* de este tipo de seguro de vida, cuyo beneficiario es la corporación y su valor nominal no es redimible hasta tanto ocurra la muerte del asegurado, una vez acaecida ésta, el valor de los activos de capital —y por ende de las acciones corporativas— se va a afectar, por lo que procede el ajuste correspondiente cuando los referidos estados fueron preparados antes de la muerte del asegurado.

## II

Resolvió correctamente el ilustrado tribunal de origen. Como argumenta en su alegato el Secretario de Hacienda, en situaciones como la de autos procede efectuar un ajuste. Lógicamente, cuando existe una póliza de seguro del tipo apuntado, su valor nominal no es redimible hasta tanto ocurra la muerte del asegurado. Acaecido ese suceso, el ingreso de los beneficios afecta favorablemente el valor de los activos y, por ende, el valor de las acciones de la corporación.

Como la ley requiere que se utilice el estado financiero de la corporación más cercano a la fecha de la muerte del causante, *el cual puede ser anterior o posterior a dicha fecha,* el ajuste sólo procederá cuando el estado financiero sometido al Departamento de Hacienda sea anterior a la muerte del causante. Ello se debe, por razones obvias, a que como no ha ocurrido la muerte, el estado *no refleja el importe recibido por la póliza de seguro,* pues a esa fecha sólo reflejará su valor de rescate en efectivo (*cash surrender value*). De ahí que este valor únicamente sirva para valorar las acciones con anterioridad a la muerte del causante pero *no* a la fecha de su muerte o posteriormente, que es el realmente importante a los fines de la contribución sobre caudales relictos.

En esas circunstancias no es posible tachar de arbitraria la acción del Secretario de Hacienda. El ajuste no se determina caprichosamente, puesto que el valor nominal surgirá de la póliza y su monto se obtendrá de una simple operación matemática: restar del valor par (*face value*) del valor en efectivo de la póliza (*cash surrender value*). Existe, pues, certeza tanto en cuanto al ajuste como en cuanto al aumento en la valoración de las acciones de una corporación y en su responsabilidad contributiva.

La ausencia del ajuste produciría una inequidad y falta de uniformidad en la tramitación de estos casos y en la determinación de la contribución que ha de pagarse, justificada únicamente por un suceso puramente casual: la fecha de la muerte del causante en relación con la preparación del estado financiero de la corporación más cercano a esa fecha.

La tesis de la Sucesión recurrente podría propiciar la evasión contributiva, puesto que permite que cantidades de dinero que ingresan al caudal no sean informadas. Aunque el cobro de contribuciones no es irrestricto —*Carazo v. Srio. de Hacienda*, 118 D.P.R. 306, 310 (1987)— el Estado tiene un interés legítimo que proteger en estos casos, ya que la evasión del pago de contribuciones sobre herencia atenta contra la política fiscal del Estado Libre Asociado. *Sánchez Rodríguez v. López Jiménez*, 116 D.P.R. 172, 188 (1985). Por esta razón no debemos interpretar una ley contributiva de manera que facilite la evasión del pago de contribuciones que la Asamblea Legislativa impuso. *West India Oil Co. (P.R.) v. Sancho Bonet, Tes.*, 54 D.P.R. 732, 744–745 (1939).

## III

Tampoco incidió el tribunal de instancia al no considerar en la valoración de las acciones la pérdida económica y

de plusvalía que representó para la corporación el fallecimiento de su hombre clave.

El Secretario de Hacienda considera inmeritorio este señalamiento de error por no haberse formulado en instancia. Aunque reconoce que los tratadistas de derecho contributivo señalan que la muerte del "hombre clave" de una corporación cerrada *puede* afectar negativamente la plusvalía (*goodwill*) y el valor de las acciones, considera que existe una razón adicional para no ajustar la deficiencia notificada. A su entender, era necesario que el albacea hubiese seleccionado la segunda alternativa ofrecida en la Sec. 33(b)(2) de la Ley de Contribuciones sobre Caudales Relictos y Donaciones de Puerto Rico, 13 L.P.R.A. sec. 5033(b)(2), y no la primera, como efectivamente hizo.

Nuevamente tiene razón. La propuesta de la Sucesión no está disponible en el método o alternativa seleccionada por el albacea. De ninguna manera puede interpretarse que el Secretario de Hacienda tenía que utilizar el segundo método alternativo de valoración que provee la ec. 33(b)(2), *supra.* Esa opción sólo es concedida al administrador, albacea o fideicomisario de la Sucesión, y no al Secretario de Hacienda.

Los métodos de valoración provistos en la ley son excluyentes. Habiendo usado el albacea el primer método, la Sucesión estaba impedida de exigir un ajuste adicional basándose en el segundo método.

Por los fundamentos expuestos, disentimos.