GOVÉN D. MARTÍNEZ SURÍS, peticionario, *v.* WENDELL WILLIAM COLÓN MUÑOZ, recurrido.

*Número:* CE-90-137        *Resuelto:* 30 de junio de 1992

---

*Govén D. Martínez Surís*, Director de la Oficina de Inspección de Notarías, peticionario; *Pedro Ortiz Álvarez*, abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR ALONSO ALONSO emitió la opinión del Tribunal.

I

La controversia en este recurso se limita a determinar si los notarios, al computar los derechos de arancel que se

deben adherir y cancelar mediante sellos de rentas internas en las escrituras de constitución de hipoteca, tienen que sumar al principal del crédito hipotecario *los créditos adicionales* garantizados por tal hipoteca (que se computan a base de dicho principal) *para otros adelantos* que el acreedor hipotecario pueda hacer al deudor *y que no están expresamente exentos por la Sec. 9* de la Ley de Arancel Notarial, 4 L.P.R.A. sec. 858.([1])

El peticionario Lcdo. Govén D. Martínez Surís, Director de la Oficina de Inspección de Notarías (Director), sostiene que los créditos adicionales que no están expresamente exentos deben sumarse a los fines de computar los derechos arancelarios que se pagan en sellos de rentas internas y que han de cancelarse en las escrituras matrices y en las copias certificadas de éstas. El notario recurrido sostiene que tal cuantía se determina sólo a base de la cuantía del crédito hipotecario (principal de la hipoteca).

La sentencia del foro sentenciador acogió la tesis del notario y dictó sentencia de conformidad. Nosotros *revocamos.*

## II

No existe controversia esencial en cuanto a los hechos que originan este recurso.

A partir de 28 de diciembre de 1987 el Inspector de Protocolos para el área sur de la isla, Lcdo. Jorge L. Yordán, examinó la obra notarial del notario recurrido para el período comprendido entre 1981 y 1986.([2]) Dicha inspección

---

([1]) Dispone dicha sección 9: "[a]l computar la cuantía de los documentos a que se refieren las secs. 851 a 858 de este título, no se incluirán los créditos adicionales por intereses, intereses moratorios, ni los de costas y honorarios de abogado que se garanticen en el contrato." 4 L.P.R.A. sec. 858.

([2]) La obra notarial del licenciado Colón Muñoz para ese período comprende noventa (90) tomos que contienen cinco mil ciento ochenta y tres (5, 183) instrumentos públicos en los cuales el notario canceló aproximadamente medio millón de dólares ($500,000) en sellos de rentas internas.

culminó el 14 de octubre de 1988. Como resultado de esa inspección, el Inspector Yordán detectó un sinnúmero de deficiencias en la obra notarial del notario recurrido entre las que se destacó el no haber adherido sellos de rentas internas en cuatro mil doscientas veintiocho (4,228) escrituras con un valor monetario ascendente a cincuenta mil veinticuatro dólares ($50,024).

En cuanto a la cancelación de sellos de rentas internas en las escrituras de hipoteca surgió una divergencia de criterio entre el Inspector Yordán y el notario recurrido sobre si debía o no sumarse al monto del crédito hipotecario (principal de la hipoteca) lo correspondiente a créditos adicionales del acreedor.

El Inspector Yordán notificó el informe de las deficiencias encontradas al notario recurrido y al Director, aquí peticionario.

Debido a las serias deficiencias encontradas por el Inspector Yordán en la obra notarial del recurrido, el peticionario acudió ante este Foro solicitando nuestra intervención inmediata.

Con vista a esta exposición de hechos y el conocimiento obvio del notario Colón de esta situación, coincidimos con el Director, licenciado Martínez Surís, en que estábamos *ante una situación alarmante que, en protección de los intereses públicos y privados implicados*, ameritaba nuestra más pronta intervención y corrección disciplinaria. El tiempo transcurrido —seis (6) años— su efecto acumulativo y la pasividad del notario Colón Muñoz en cumplir su deber ministerial, así lo reclamaban. La magnitud de las deficiencias a nivel económico rebasaba incluso el máximo actual de quince mil dólares ($15,000) que la nueva Ley Notarial de Puerto Rico exige como fianza garantizadora para responder por el incumplimiento de la ley y los daños que esta práctica pudiera generar.

Ante estas circunstancias, el 26 de enero de 1989, ordenamos de inmediato la suspensión provisional del notario

Colón Muñoz del ejercicio de la notaría e instruimos al Alguacil de este Tribunal a que se incautara de su obra notarial para el examen posterior por el Director.

Simultáneamente, le concedimos al notario Colón Muñoz un término de veinte (20) días para que compareciera por escrito a mostrar causa por la cual no debía ser suspendido definitivamente de la notaría y separado del ejercicio de la profesión legal. Véase *In re Colón Muñoz*, 131 D.P.R. 121 (1992).

Luego de que el Alguacil de este Foro se incautara de la obra notarial del recurrido y la colocara bajo la custodia del peticionario para que éste la reinspeccionara, compareció ante nos el recurrido solicitando que dejáramos sin efecto su suspensión provisional del ejercicio del notariado. Así lo dispusimos mediante Resolución de 31 de enero de 1989. Además, ordenamos al peticionario que reexaminara la obra notarial del recurrido hasta 1987, inclusive.

El 15 de febrero de 1989, el peticionario rindió su informe de la reinspección de la obra notarial del recurrido.[3] Luego de que el notario recurrido nos lo solicitara, *el 11 de mayo de 1989 ordenamos al peticionario someter a la consideración del Tribunal Superior, Sala de Ponce, la divergencia de criterio en cuanto a la cancelación de sellos de rentas internas.* A tenor con nuestro mandato, el peticionario instó el correspondiente Informe sobre Divergencia de Criterio ante el foro de instancia competente para dilucidar tal divergencia.

Para exponer en términos prácticos la divergencia, el Director sometió a la consideración del Tribunal Superior, Sala de Ponce, dos (2) escrituras de hipoteca autorizadas por el notario Colón Muñoz como ejemplo representativo de la controversia. Como *exhibit* A presentó la Escritura

---

[3] Según dicho informe, la cantidad en sellos en la controversia donde existe divergencia de criterios asciende a veintisiete mil cuatrocientos dos dólares con ochenta y tres centavos ($27, 402.83).

Núm. 122 sobre primera hipoteca otorgada el 18 de marzo de 1985. En ésta se constituyó hipoteca para garantizar la cantidad principal de cincuenta y un mil seiscientos cincuenta dólares ($51,650). *Además de ese principal, se garantiza la cantidad de cinco mil ciento sesenta y cinco dólares ($5,165) para intereses, además de los garantizados por ley, igual cantidad para garantizar y/o cubrir costas, gastos y honorarios de abogado en caso de ejecución o reclamación judicial y, por último, igual cantidad ($5,165) para otros adelantos* que puedan hacerse dentro de dicha hipoteca, además de las cantidades que indica el pagaré.

Conforme el criterio del Director peticionario, la cantidad para *otros adelantos* ($5,165) debe sumarse al principal de la hipoteca al determinarse la cuantía base para el cómputo de sellos de rentas internas que corresponde cancelar en el original y las copias certificadas de dicha escritura de acuerdo con el arancel notarial. La operación matemática para obtener la cuantía base de la Escritura Núm. 122 sería:

|  |  |
|---|---|
| $51,650.00 | de principal |
| + 5,165.00 | para otros adelantos |
| $56,815.00 | total |

El arancel notarial vigente al otorgarse dicha escritura disponía (y aún dispone) que por los primeros mil dólares ($1,000) o fracción se pagan dos dólares ($2) en sellos y por los cincuenta y seis mil dólares ($56,000) restantes se paga un dólar ($1) por cada mil dólares ($1,000). En total debía adherirse y cancelarse en la Escritura Matriz Núm. 122 la cantidad de cincuenta y ocho dólares ($58) en sellos de rentas internas. En dicha escritura aparecen cancelados sellos por un total de cincuenta y tres dólares ($53). Ello, según el peticionario, representa una deficiencia en sellos de rentas internas de cinco dólares ($5).

Como *exhibit* B, el Director presentó al foro de instancia la Escritura Núm. 944, sobre primera hipoteca, autorizada

por el notario Colón Muñoz el 12 de noviembre de 1987. En ésta se constituyó hipoteca por la cantidad principal de ciento treinta mil dólares ($130,000). Pero, nos expone el Director:

En ésta, además del principal se garantiza como modalidad distinta *una suma equivalente al 10% de la cuantía original del principal del pagaré para cubrir costas, gastos y honorarios de abogados. También se garantiza una suma equivalente al 10% de la cuantía original del principal del pagaré para cubrir cualquier otro anticipo que pueda hacerse bajo la hipoteca y una cantidad equivalente al 10% de la cuantía original del principal del pagaré para cubrir intereses en adición a los garantizados por ley.*

En este caso como en la hipoteca Núm. 122 del 1985, está exento el crédito de 10% para cubrir costas, gastos y honorarios de abogados y los intereses. *Pero como he expresado anteriormente, el 10% de la cuantía original del principal que se garantiza para cubrir* cualquier otro anticipo *que pueda hacerse no está exento del pago de derechos y también debe añadirse al principal al determinar la cuantía.* Así las cosas, tenemos $130,000 como principal de la hipoteca y $13,000 para otros adelantos para una suma total de $143,000. Según lo determina el arancel notarial aplicable, se pagarán $2.00 por los primeros $1,000 o fracción y $1.00 por cada $1,000 adicionales por los restantes $142.00 *para un total de $144.00 que debieron cancelarse en la escritura matriz de este documento. Se encuentran adheridos y cancelados sellos por un total de $131.00, existiendo por lo tanto una deficiencia de $13.00.* (Énfasis suplido.)

El foro de instancia recibió prueba documental[4] y escritos argumentativos de cada parte. Además, celebró una vista donde escuchó prueba testifical.

---

[4] En su Contestación al Informe del Inspector sometido a este Tribunal el notario Colón Muñoz acompañó varias certificaciones (y una declaración jurada) de varios notarios (Lcdo. Alfredo J. Mora, Lcda. Olga Soler Bonnin, Lcdo. Raúl Matos y Lcdo. Antonio Zapater Cajigas) en las que éstos consignan que la práctica notarial en el área de Ponce —por años avalada por los Inspectores de Protocolos— era computar y cancelar los sellos de rentas internas tomando como base sólo el principal de la hipoteca. Acompañó además dos (2) declaraciones juradas de dos (2) ejecutivos de instituciones hipotecarias de Ponce, en las que afirman que los créditos adicionales no se toman en consideración en el cómputo de sellos de rentas internas.

En apoyo de su posición, el peticionario sometió en evidencia, y el foro de instancia admitió, dos (2) sentencias dictadas por el Tribunal Superior, Sala de San Juan, que resuelven la divergencia de criterio a su favor.[5]

El recurrido planteó varias defensas, entre las cuales figuraron *el alegado uso y costumbre* de la práctica notarial del área sur de no incluir los créditos adicionales en el cómputo de los sellos y *la anuencia a tal práctica por anteriores inspectores de protocolos.* Sostuvo, además, que su interpretación particular de las disposiciones legales en controversia era razonable y válida.

*El 22 de enero de 1990 el foro de instancia dictó sentencia a favor del recurrido.* Resolvió que el propósito legislativo de la Sec. 9 de la Ley de Arancel Notarial, *supra*, era gravar tan sólo la cuantía del negocio de hipoteca y no las sumas accesorias (como los créditos adicionales garantizados por la hipoteca) que suelen acompañarlo. Por lo tanto, resolvió que no procedía sumar al principal de la hipoteca esos créditos a los fines del cómputo de los sellos.

De ese dictamen acudió el peticionario ante nos.

Por la importancia de la cuestión implicada, expedimos el auto. Véase Regla 19a(6) de nuestro Reglamento, 4 L.P.R.A. Ap. I-A.

Las partes han comparecido.[6] Resolvemos.

## III

Aquí no está en controversia la obligación del notario de cerciorarse de que en las escrituras matrices y las copias certificadas estén adheridos y cancelados los sellos de rentas internas dispuestos en ley. 4 L.P.R.A. sec. 851 *et*

---

[5] En los casos *David Pastor v. Carlos Carrera Benítez*, Civil Núm. 72-7991-I, y *Lcdo. Govén D. Martínez Surís v. Robert E. Schneider, Jr.*, Civil Núm. 78-7947 (903).

[6] El peticionario sometió el recurso a base de su petición de *certiorari*. Así lo concedimos.

*seq*. Tampoco se cuestiona la facultad del Inspector de Protocolos para fiscalizar esa responsabilidad del notario.

■ Sabido es que la Ley Notarial de Puerto Rico dispone que el Inspector de Protocolos deberá informar al Director si en la matriz de los instrumentos protocolizados aparecen adheridas y canceladas las estampillas de rentas internas computadas de acuerdo con el arancel notarial. Esto necesariamente implica que el Inspector ha de *verificar* que los derechos cancelados en sellos de rentas internas sean los que corresponden devengar al Estado Libre Asociado de Puerto Rico.

■ Para resolver la controversia en este caso[7] no es propio acudir al uso y costumbre, pues la materia *está regulada expresamente por la ley.* Art. 5 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5. *Cf. Coll v. Picó*, 82 D.P.R. 27, 36 (1960); *Reyes v. Torres*, 65 D.P.R. 821, 825 (1946). De hecho, cuando el legislador ha querido dar fuerza de ley al uso y costumbre lo ha indicado de manera clara tipificándolo. Ese no es el caso ante nos. *Cf.* Arts. 414, 506, 1385, 1445(2), 1464 y 1468 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 1525, 1737, 3853, 4052(2), 4071 y 4084 respectivamente; Art. 2 del Código de Comercio, 10 L.P.R.A. sec. 1002.

■ Por otro lado, el hecho de que ciertos Inspectores de Protocolos hayan tolerado la alegada práctica de los notarios de computar la cuantía en sellos aquí en controversia, sólo a base del principal de la hipoteca, no crea derechos a favor de los notarios o de las partes. Un error administrativo no crea derechos ni impide su corrección. Una parte no puede pretender ampararse en una actuación administra-

---

[7] Queda fuera de controversia la constitución de hipoteca para garantizar el precio aplazado de compraventa, regulado por la Sec. 4 de la Ley Núm. 101 (4 L.P.R.A. sec. 853).

tiva incorrecta o ilegal. *Del Rey v. J.A.C.L.*, 107 D.P.R. 348, 355–356 (1978).

Aclarados esos extremos, veamos la interpretación de la ley hecha por las partes.

## IV

De todos es conocido que generalmente la hipoteca no sólo garantiza el principal del préstamo o crédito concedido por el acreedor hipotecario al deudor *sino que también garantiza otros créditos accesorios.* Estos créditos adicionales incluyen:

> 1) Intereses legales, 31 L.P.R.A. sec. 4591, *et seq.*, o moratorios, 31 L.P.R.A. sec. 3025.
>
> 2) costas, gastos y honorarios de abogado para el caso en que el· acreedor tenga que recurrir a la ejecución de la hipoteca o a la reclamación judicial de lo adeudado. Regla 44 de Procedimiento Civil, 32 L.P.R.A. Ap. III.
>
> 3) *otros adelantos* para cubrir el pago de contribuciones, seguros de la propiedad y otros gastos concebibles en este tipo de transacción. Esta suma usualmente se fija a base del diez por ciento (10%) de la cantidad principal adeudada. *Cf.* 30 L.P.R.A. sec. 2706(III)(d).

Por disposición expresa de la Sec. 9 de la Ley Núm. 101, *supra,* los conceptos en los párrafos 1 y 2 antes mencionados, a saber, las cantidades estipuladas por las partes en el contrato de hipoteca en concepto de intereses (legales o moratorios), y las costas, gastos y honorarios de abogado *están exentos* en el cómputo de la cuantía base para el pago de sellos de rentas internas.

Sin embargo, el crédito adicional en concepto *de otros adelantos* que pueden hacerse dentro del contrato de hipoteca *no está taxativamente exento* de dicho cómputo.

El recurrido concede que el legislador no incluyó taxativamente ese crédito adicional entre las exenciones al pago de derechos. Sin embargo, sostiene que tal "omisión" de

incluir estas sumas dentro de las exenciones de la Ley de Arancel Notarial no refleja que la intención legislativa fuera excluirlas *y que no impide que, judicialmente*, podamos armonizar la ley notarial con las leyes *in pari materia* (especialmente con la ley hipotecaria) para lograr la uniformidad tributaria deseada en el cobro de derechos que persigue todo sistema de imposición contributiva. El notario aduce que no cobró a los otorgantes suma alguna para cancelar sellos por este concepto ya que ese era el uso y costumbre de la notaría en el sector financiero y es afín con el cobro de derechos para la inscripción en el Registro de la Propiedad. De hecho, el recurrente sostuvo que la omisión de cancelar sellos en concepto del crédito adicional en las escrituras originales y las copias certificadas presentadas al Registro de la Propiedad no produjo inconveniente alguno, al punto de que tales títulos fueron inscritos sin problema alguno.

El peticionario, por su lado, sostiene que dichas cantidades para adelantos deben sumarse al principal de la hipoteca a fin de determinar la cuantía base para el cómputo de sellos de rentas internas que corresponde cancelar conforme al arancel notarial fijado en la Sec. 2 de la Ley Núm. 101, *supra*, 4 L.P.R.A. sec. 851. La posición del peticionario se fundamenta en dos (2) postulados básicos. En primer lugar, sostiene que, siendo el pago de derechos (sellos) un tributo al Estado, la exención de su pago debe interpretarse restrictivamente en contra de quien sostiene la exención. *Cf. Rodríguez Fernández v. Srio. de Hacienda* 83 D.P.R. 643 (1961). En segundo lugar, plantea que la ley es clara al no disponer una exención expresa al pago de derechos con relación a los créditos adicionales por adelantos. Según éste, ambos postulados impiden que el foro judicial entre a revisar la intención legislativa de la Ley Núm. 101, *supra*, so pretexto de cumplir su espíritu. Art. 14 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 14. *Tiene razón.*

# V

■ Un examen cuidadoso de la trayectoria legislativa de la Ley Núm. 101, *supra*, sobre el arancel notarial, refleja que *ninguna de las leyes anteriores eximía del pago de derechos cantidad alguna relacionada con adelantos o créditos adicionales concedidos por el acreedor al deudor en la constitución de hipotecas.*

Actualmente disponen, en lo aquí pertinente, las Sec. 2, 3, 4, 5, 6, 8 y 9 de la Ley Núm. 101, *supra*, 4 L.P.R.A. secs. 851, 852, 853, 854, 855, 857 y 858, respectivamente.

*Sec. 851. Cobro de derechos para instrumentos públicos; sellos de rentas internas —Denominaciones*

En cada documento e instrumento original, autorizado por notario público, que haya de ser protocolizado, y sus copias, se fijarán y cancelarán sellos de rentas internas de los siguientes valores o denominaciones:

(a) Cuando dicho documento sea por una cuantía que no exceda de doscientos cincuenta dólares ($250), cincuenta centavos (50¢) por el original y veinte centavos (20¢) por cada copia.

(b) Cuando la cuantía exceda de doscientos cincuenta dólares ($250) y no pase de quinientos dólares ($500), un dólar ($1) por el original y cincuenta centavos (50¢) por cada copia.

(c) Cuando la *cuantía* exceda de quinientos dólares ($500) y no pase de mil dólares ($1,000), dos ($2) dólares por el original y un dólar ($1) por cada copia.

(d) Cuando la *cuantía* exceda de mil dólares ($1,000) y no pase de cinco mil dólares ($5,000), dos dólares ($2) por los primeros mil dólares ($1,000) y cincuenta centavos (50¢) adicionales por cada mil dólares ($1,000) o fracción de mil dólares por el original; y un dólar ($1) por los primeros mil dólares y veinte centavos (20¢) adicionales por cada mil dólares o fracción de mil dólares por cada copia.

(e) Cuando la *cuantía* exceda de cinco mil dólares ($5,000), dos dólares ($2) por los primeros mil dólares ($1,000) y un dólar ($1) adicional por cada mil dólares ($1,000) o fracción de mil dólares por el original; y un dólar ($1) por los primeros mil dólares ($1,000) y cincuenta centavos (50¢) adicionales por cada mil dólares o ($1,000) fracción de mil (1,000) dólares por cada copia.[8]

---

[8] La sección 851 fue enmendada en 1982 para establecer el texto actual. Ley Núm. 5 de 12 de agosto de 1982 (4 L.P.R.A. sec. 851).

*Sec. 852.—Documentos sin cuantía fija; reconocimiento de hijos naturales*

Los poderes, actas y demás documentos de cualquier clase hechos ante notario público, en que *no se fija cuantía*, pagarán por su original un (1) dólar cada uno y por cada copia cincuenta (50) centavos cada uno; Disponiéndose, que las escrituras cuyo único objeto sea el reconocimiento de hijos naturales no devengarán derecho alguno por su original ni por sus copias.

*Sec. 853 —Permutas; compraventa con hipoteca*

En los documentos de permuta, la propiedad de mayor valor entre las permutadas servirá de base para la determinación de *la cuantía del documento*; y cuando se trate de contratos de compraventa con hipoteca sobre el precio aplazado los derechos se determinarán a base del montante de la venta sin incluir el *montante* de la hipoteca que garantiza la parte del precio aplazado.

*Sec 854.—Contratos de refacción agrícola*

Las disposiciones de las secs. 851 a 858 de este título no serán aplicables al duplicado de la copia de los contratos de refacción agrícola y de molienda de cañas que sean presentados al registro y que han de ser archivados para formar el legajo que dispone la sec. 170 del Título 5.

*Sec. 855.—Exenciones adicionales*

Tampoco serán aplicables las disposiciones de las secs. 851 a 858 de este título a pólizas de seguros; conocimientos de embarque y de transportación terrestre y otros documentos similares relativos a la transportación de carta (exceptuando contratos de transportación); fianzas judiciales; cartas de pago y recibos de *cantidades* no consignadas en documentos públicos, siempre que la cuantía sea menor de $500; facturas comerciales; *tickets* o boletos de pasaje; pagarés; giros; cheques; letras de cambio y otros documentos negociables, de acuerdo con las disposiciones del Código de Comercio, ni a contratos de refacción agrícola en que el préstamo no exceda de dos mil quinientos dólares ($2,500), en los cuales sea una parte o intervenga directa o indirectamente cualquier corporación, asociación, o agencia creada en virtud de leyes del Congreso de los Estados Unidos de América, o asociaciones cooperativas para fines no pecuniarios organizadas de acuerdo con las leyes de Puerto Rico para dar facilidades de crédito a los agricultores. Tampoco serán aplicables las disposiciones de dichas secciones a las escrituras de constitución, modificación y cancelación de hipotecas en garantía de préstamos concedidos por los sistemas de retiro del Estado Libre Asociado de Puerto Rico, la Universidad de Puerto Rico, la Autoridad de las Fuentes Fluviales, la Asociación de

Maestros, o cualquier sistema de retiro establecido por cualquier agencia, instrumentalidad, autoridad o corporación pública del Estado Libre Asociado. Disponiéndose además, que tampoco serán aplicables las disposiciones de dichas secciones, a las escrituras donde el Fideicomiso de Conservación de Puerto Rico, según el mismo ha sido creado y es operado bajo la escritura número 5 del 23 de enero de 1970, ante el Notario Luis F. Sánchez Vilella, adquiera, traspase, grave o enajene bienes que se relacionen con los fines para los cuales dicho Fideicomiso fue creado y organizado.

Sec. 858.—*Intereses, costas y honorarios de abogado, excluidos al computar cuantía*

Al computar la *cuantía* de los documentos a que se refieren las secs. 851 a 858 de este título, no se incluirán los créditos adicionales por intereses, intereses moratorios, ni los de costas y honorarios de abogado que se garanticen en el contrato. (Énfasis suplido.)

■ De la lectura de dichas disposiciones surge con meridiana claridad que actualmente la Ley Núm. 101, *supra*, según enmendada, *tampoco establece una exención a favor de los créditos adicionales aquí en controversia. Más aún, cuando el legislador ha querido eximir determinado negocio o cuantía del pago de sellos de rentas internas lo ha hecho taxativamente mediante enmienda a la Ley Núm. 101, supra.* Así, por ejemplo, en 1960 se añadieron, como exención adicional, las hipotecas en garantía de préstamos concedidos por los diversos sistemas de retiro de empleados públicos, Ley Núm. 3 de mayo 24 de 1960 (4 L.P.R.A. sec. 855); y en 1976 se añadió la exención en los negocios jurídicos relacionados con bienes del Fideicomiso de Conservación de Puerto Rico, Ley Núm. 122 de 2 de junio de 1976 (4 L.P.R.A. sec. 855).

Ya desde su aprobación estaban exentos los documentos especificados en las Secs. 3, 4, 5 y 6 de la Ley Núm. 101, *supra* (antes de las enmiendas mencionadas).

También se disponía *taxativamente* para la exclusión de la cuantía de los documentos —a que se refiere la Ley Núm. 101, *supra*, 4 L.P.R.A. sec. 851— de los créditos adicionales por intereses legales, intereses moratorios, costas

y honorarios de abogado garantizados en el contrato. 4 L.P.R.A. sec. 858.

No hemos encontrado disposición legal que prohíba que se garanticen esos créditos en el contrato de hipoteca, siempre que se cumpla con el principio hipotecario de especificidad del crédito. *Cf.* 30 L.P.R.A. sec. 2706III(d) y Art. 147.1 del Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2003–147.1, edición especial (principio de especialidad).

▪▪▪▪ Dentro del ámbito impositivo es norma trillada que las exenciones tributarias han de tenerse como "gracias" legislativas y que "[s]iendo las exenciones contributivas derogaciones del poder del soberano, no deben extenderse más allá de los términos expresos y exactos del estatuto que las otorga y toda duda debe resolverse en contra de la existencia de la exención". *Texas Co. (P.R.) Inc. v. Trib. de Contribuciones*, 82 D.P.R. 134, 160–161 (1961). Véanse, además: *Gotay Lanuza v. Srio. de Hacienda*, 122 D.P.R. 850 (1988); *Banco Popular v. Mun. de Mayagüez*, 120 D.P.R. 692 (1988); *Municipio de Carolina v. Caribair*, 101 D.P.R. 943 (1974); *Central Igualdad, Inc. v. Srio. Hacienda*, 83 D.P.R. 45, 50 (1961); *Descartes, Tes. v. Tribl. Contribuciones y Ortiz*, 73 D.P.R. 491, 497 (1952); *Talcott Inter-Amer. Corp. v. Registrador*, 104 D.P.R. 254, 262 (1975). De ahí que resulte cónsono interpretar las leyes tributarias conforme a su letra, esto es, sin menospreciarla en pos de alcanzar su propósito o espíritu. Art. 14 del Código Civil de Puerto Rico, *supra*; *Sucn. Del Coro Lugo v. Srio. de Hacienda*, 130 D.P.R. 1 (1992); *El Vocero v. Junta de Planificación*, 121 D.P.R. 115 (1988). Precisamente, los esquemas tributarios se caracterizan por el apego a la letra de la ley.

▪▪▪ Aunque no se conceptualiza como tal, la posición del peticionario se fundamenta en la norma *Expressio unius est exclusio alterius*, según la cual la mención espe-

cífica de una cosa implica la exclusión de otras cosas de igual naturaleza. De acuerdo con el peticionario, la mención específica de las exenciones en la Sec. 9 de la Ley Núm. 101, *supra*, implica la exclusión de otras exenciones de igual naturaleza.

Este Foro ha reconocido esta norma en el pasado dentro de la situación de cobro de derechos. Véase *Salgado v. Comisión Hípica Insular*, 49 D.P.R. 464, 466–467 (1936). Allí resolvimos que cuando la ley expresa los casos en que se autoriza cobrar ciertos derechos a la Comisión Hípica existe un fuerte indicio de que la intención legislativa fue la de no incluir otros casos distintos a los expresados en el estatuto. Sobre esta regla de hermenéutica legal señalamos:

> *No puede negarse, sin embargo, que cuando en una ley se conceden específicamente ciertas facultades y no se mencionan otras de la misma categoría, existe un fuerte indicio de la intención legislativa en el sentido de no incluir nada más que lo expresado. Para llegar a una conclusión contraria es necesario que la misma ley demuestre que la intención del legislador no fué limitar las facultades concedidas a las estrictamente enumeradas.* (Énfasis suplido.) *Salgado v. Comisión Hípica Insular*, supra, págs. 466–467. Véase, además, R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1987, pág. 346.

Un cuidadoso análisis de las disposiciones en controversia nos mueve a aplicar esta regla de hermenéutica y resolver que aquellos créditos adicionales y accesorios garantizados por la hipoteca, que no sean los taxativamente dispuestos en la Sec. 9 de la Ley Núm. 101, *supra*, 4 L.P.R.A. sec. 858, *no están exentos* del pago de derechos en sellos de rentas internas a favor del Estado.

A falta de exención expresa, no puede acudirse a la interpretación extensiva de las exenciones para eximir esos créditos del pago de derechos.

Corresponde al legislador eximir, si así lo entiende apropiado, esos créditos adicionales por adelantos garantizados

por la hipoteca del pago de derechos arancelarios dispuestos en la Ley Núm. 101, *supra*. En ausencia de tal exención expresa, corresponde a este Tribunal interpretar la Ley Núm. 101, *supra*, en el sentido de que tales créditos adicionales por adelantos tienen que adicionarse al principal del crédito en el cómputo de la cuantía base para el pago de tales derechos.

Por ello, tampoco podemos recurrir a la Ley Hipotecaria y del Registro de la Propiedad de 1979 en busca de una solución a la controversia aquí planteada. Los términos claros de las exenciones dispuestas en la Ley Núm. 101, *supra*, nos lo impiden. El hecho de que la Ley Hipotecaria y del Registro de la Propiedad de 1979 fije el pago de derechos a base de la cantidad principal, 30 L.P.R.A. sec. 1767b(*Octava*), no impide que la base para el cómputo de arancel notarial sea distinto aun tratándose de operaciones tan próximas. No es nuestra función judicial pasar juicio sobre la sabiduría de tal disparidad en los cómputos de sellos o sobre la ausencia de uniformidad en el cobro de tributos. Tal resultado cae dentro del ámbito de discreción legislativa en el válido ejercicio de su poder tributario.

Tampoco cabe acudir al cómputo de la fijación de los honorarios del notario para solucionar esta controversia. El foro de instancia sostuvo que en vista de la práctica de los notarios de cobrar sus honorarios sobre la base del principal del negocio involucrado debe entenderse que los créditos accesorios están exentos del pago de derecho. Aparte de que los honorarios del notario se computan, de acuerdo con el Art. 77 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2131, a base del valor de los objetos o de la cantidad de valor determinable, debemos tener presente que una y otra disposición buscan fines distintos. La alegada analogía resulta forzada.

Lo aquí resuelto *confirma el estado de derecho vigente*, al cual la gran mayoría de los notarios han dado

cumplimiento. Ese estado de derecho fue confirmado por dos (2) sentencias, del Tribunal Superior, una de 1973 y otra de 1981. Además, la Oficina del Director de Inspección de Notarías siempre ha interpretado la ley conforme a lo resuelto en dichas dos (2) sentencias y a lo aquí dispuesto.

Por ello nuestro dictamen aplica al notario recurrido, quien deberá adherir y cancelar los sellos correspondientes a su obra notarial conforme a lo aquí dispuesto y a todos aquellos notarios cuyos protocolos estén pendientes de aprobación por el peticionario al momento en que emitimos este dictamen.

*Se dictará sentencia de conformidad.*

El Juez Presidente Señor Andréu García se inhibió.