# 2004 DTA 108

RECEIVED
OCT 1 9 2004
SERIALS DEPARTMENT
HARVARD LAW SCHOOL LIBRARY

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**REGION JUDICIAL DE SAN JUAN, PANEL III**

ASOCIACIÓN DE RESIDENTES DE RINCÓN, ENTIDAD NO INCORPORADA REPRESENTADA POR DAVID WISHINSKY Y CARLOS GASTÓN, QUIENES TAMBIÉN COMPARECEN EN SU CAPACIDAD PERSONAL
Recurrentes

v.

DEPARTAMENTO DE RECURSOS NATURALES Y AMBIENTALES, JUNTA DE CALIDAD AMBIENTAL Y JUNTA DE PLANIFICACIÓN DE PUERTO RICO
Recurridos

-----------------------------------------

CARLOS GASTÓN Y DAVID WISHINSKY, QUIENES COMPARECEN EN SU CAPACIDAD PERSONAL Y COMO MIEMBROS DE LA ASOCIACIÓN DE RESIDENTES DE RINCÓN
(ENTIDAD NO INCORPORADA)
Recurrentes

v.

JUNTA DE PLANIFICACIÓN DE PUERTO RICO

Núms. Cons. KLRA-2003-00320 / KLRA-2003-00557

San Juan, Puerto Rico, a 20 de mayo de 2004

[REDACTED]

Panel integrado por su Presidente, el Juez Ortiz Carrión,
y los Jueces Segarra Olivero y Negroni Cintrón

Segarra Olivero, Juez Ponente

[REDACTED]

## TEXTO COMPLETO DE LA SENTENCIA

Los recurrentes de epígrafe nos solicitan la revisión de una resolución emitida por la Junta de Planificación mediante la cual se aprobó la consulta de ubicación sometida por Calrincón Corp.

Por los fundamentos que más adelante exponemos, expedimos el auto solicitado, revocamos la resolución recurrida y devolvemos el caso al foro de origen para la continuación de los procedimientos de forma compatible con lo aquí expuesto.

### I

El 9 de mayo de 2002, Calrincón Corp., en lo sucesivo Calrincón, sometió ante la consideración de la Junta de Planificación la consulta de ubicación número 2001-25-0402-JPU para la construcción de un proyecto residencial multifamiliar en una finca con cabida de 8.82 cuerdas situada en la Carretera Estatal Número 413, kilómetro 1.0 en el Barrio Ensenada del Municipio de Rincón, Puerto Rico. El terreno en cuestión ubica en un distrito RT-1. El proyecto propuesto consta de 184 apartamentos, los cuales estarían distribuidos en cuatro edificios de tres niveles, y 320 estacionamientos.

El 12 de junio de 2002, la Junta de Planificación emitió una resolución en la cual acordó "*dejar en suspenso por 30 días para que el proponente rediseñe el proyecto incorporando el elemento turístico que dispone el distrito vigente de acuerdo a la Zonificación de Interés Turístico aprobada por la Junta de Planificación; el concepto solicitado deberá conformar el Plan Territorial hasta donde éste ha sido estudiado*".

El 23 de julio de 2002, el Sr. Wishinsky solicitó intervención ante la Junta de Planificación, la cual le fue

concedida. Posteriormente, solicitó la celebración de una vista pública sobre la consulta de ubicación.

El 13 de febrero de 2003, la Junta de Planificación emitió otra resolución en la que reiteró lo que había dispuesto en la resolución anterior y en la que declaró sin lugar la solicitud para la celebración de vista pública.

El 7 de marzo de 2003, la Junta de Planificación emitió la resolución de la cual se recurre ante nos en la cual aprobó la consulta de ubicación solicitada por Calrincón. Dicha resolución fue notificada a las partes el 13 de marzo de 2003.

En el proceso de evaluación de la consulta de ubicación, la Junta de Planificación consultó y/o solicitó el endoso de diversas agencias gubernamentales, a saber: la Autoridad de Energía Eléctrica, Autoridad de Acueductos y Alcantarillados, el Instituto de Cultura Puertorriqueña, la Autoridad de Carreteras, el Departamento de Agricultura, la Junta de Calidad Ambiental, el Departamento de Recursos Naturales y el Municipio de Rincón.

En lo que aquí nos concierne, destacamos los comentarios y los endosos emitidos por el Departamento de Recursos Naturales y Ambientales (Recursos Naturales) y la Junta de Calidad Ambiental respecto a la referida consulta (Calidad Ambiental).

El 5 de noviembre de 2002, Recursos Naturales emitió una comunicación en la que endosó el proyecto propuesto, con la condición de que se cumplieran con varios reglamentos de la agencia ■ y que se obtuviera de Calidad Ambiental el permiso para el control de erosión y sedimentación para minimizar la erosión hacia los cuerpos de agua cercanos al proyecto. Recursos Naturales advirtió que dicho endoso no constituia una autorización para mover material de la corteza terrestre ni para realizar ningún trabajo en el área hasta tanto se cumpliera con todos los reglamentos y reglas aplicables al movimiento de terreno y con el Reglamento para la Extracción de Material de la Corteza Terrestre.

Recursos Naturales señaló, además, que estaba de acuerdo con el plano de mensura sometido en el cual se establece el límite de la zona marítimo-terrestre y los seis (6) metros de servidumbre de la vigilancia del litoral dedicada a uso público, la cual deberá quedar libre de construcciones.

De otra parte, la Junta de Planificación, como agencia proponente, sometió ante Calidad Ambiental un documento titulado Evaluación Ambiental (EA) en el que sostuvo, en lo pertinente, que el proyecto objeto de estudio no causaría un impacto ambiental significativo en el sector en que estaría ubicado.

El 6 de marzo de 2002, Calidad Ambiental, luego de analizar dicha EA, le informó a la Junta de Planificación que la propuesta cumplía con el Artículo 4(c) de la Ley Núm. 9 de 18 de junio de 1970, conocida como Ley de Política Pública Ambiental, 12 L.P.R.A. secs. 1124(C). Calidad Ambiental también emitió ciertas recomendaciones y condiciones que los proponentes del proyecto en cuestión debían cumplir.

En la resolución recurrida, la Junta de Planificación hizo referencia a todos los comentarios y endosos suscritos por las agencias consultadas y concluyó, como cuestión de derecho, lo siguiente: (1) los terrenos objeto de la consulta están comprendidos dentro de un distrito RT-1; (2) de acuerdo al Reglamento de Procedimientos Adjudicativos de la Junta de Planificación de 12 de noviembre de 1999, Reglamento Núm. 6031, le compete a la Junta de Planificación tramitar el desarrollo como una consulta de ubicación; (3) que la Sección 66.01 del Reglamento de Planificación Núm. 4 establece que la Junta de Planificación considerará los proyectos de apartamentos en los distritos RT-1 mediante consulta de ubicación; (4) que la consulta propuesta está en armonía con los Objetivos y Políticas Públicas del Plan de Usos de Terrenos de Puerto Rico. La Junta de Planificación señaló, además, que la aprobación de la consulta estaba sujeta a la condición de que se cumplieran diversos señalamientos y recomendaciones allí expuestas.

El 2 de marzo de 2003, los recurrentes solicitaron la reconsideración del dictamen emitido por la Junta de Planificación. En esa misma fecha, presentaron una moción de reconsideración ante el Departamento de Recursos Naturales y otra ante Calidad Ambiental.

El 8 de mayo de 2003, los recurrentes comparecieron ante nos mediante el recurso de revisión administrativa del título (KLRA-2003-00320) en el que impugnan la resolución emitida por la Junta de Planificación mediante la cual se aprobó la consulta de ubicación y los comentarios y certificaciones emitidas por Calidad Ambiental y Recursos Naturales. Los recurrentes formularon los siguientes señalamientos de error:

*"1. erró el DRNA al aprobar un deslinde de la zona marítimo-terrestre llevado a cabo en violación a los requisitos de notificación del Reglamento para el Aprovechamiento, Vigilancia, Conservación y Administración de las Aguas Territoriales, los Terrenos Sumergidos bajo éstas y la Zona Marítimo-Terrestre.*

*2. erró la JCA al certificar que la Evaluación Ambiental sometida por la JP cumple con los requisitos procesales del Artículo 4(c) de la Ley sobre Política Pública Ambiental (12 L.P.R.A. sec. 1124(c)) y al JP al determinar que la Consulta de Ubicación propuesta no tendría impacto ambiental significativo.*

*3. erró la JP al aprobar la Consulta de ubicación sin que antes el proponente haya sometido el estudio hidrológico-hidráulico requerido por el Reglamento sobre Zonas Susceptibles a Inundaciones.*

*4. erró la JP al conceder variaciones reglamentarias en violación al Reglamento de Zonificación y la jurisprudencia aplicable.*

*5. erró al JP al aprobar la Consulta de Ubicación sin haber celebrado las vistas públicas requeridas por el Reglamento de Zonificación.*

*6. erró la JP al aprobar la consulta de ubicación sin tener el endoso del Instituto de Cultura Puertorriqueña.*

*7. erró la JP al aprobar una consulta de ubicación y emitir una resolución con condiciones diferentes a las que aparecen en el plano del proyecto aprobado junto a la misma consulta de ubicación."*

El 14 de abril de 2003, la Junta de Planificación acogió la solicitud de reconsideración presentada por los recurrentes. Sin embargo, dicha resolución no le fue notificada a las partes hasta el 14 de mayo de 2003. El 27 de junio de 2003, la Junta de Planificación emitió una resolución, notificada a las partes el 2 de julio de 2003, en la cual denegó la referida solicitud de reconsideración.

A la luz del trámite reseñado, la Junta de Planificación compareció ante nos y solicitó la desestimación del recurso KLRA-2003-00320 por prematuro. ■

Calrincón también alegó que el recurso es prematuro y solicitó su desestimación. Adujo, además, que el recurso no había sido notificado a las partes con interés en el pleito (los señores Ramón Medina, Miguel Bonilla y Guillermo Torres) y a ARPE y que este Foro carecía de jurisdicción para revisar las decisiones emitidas por Calidad Ambiental y Recursos Naturales en lo que respecta a la consulta de ubicación solicitada. ■ Calrincón también discutió los señalamientos de error levantados por los recurrentes.

Calidad Ambiental solicitó la desestimación del recurso por el fundamento de que la Asociación de Residentes de Rincón carece de legitimación activa. ■

Calrincón solicitó el traslado del presente recurso a la región judicial de Aguadilla-Mayagüez, porque el

proyecto en cuestión está ubicado en el Municipio de Rincón. Por otro lado, los recurrentes alegaron que el panel correspondiente a la región judicial de San Juan es el que tiene facultad para atender el recurso de autos, puesto que todas las agencias administrativas involucradas en el caso están ubicadas en el Municipio de San Juan. ▮

Los recurrentes se opusieron a todas las solicitudes presentadas por Calrincón y las distintas agencias.

Finalmente, el 1 de agosto de 2003, los recurrentes comparecieron nuevamente ante este Tribunal mediante la presentación del recurso de revisión administrativa KLRA-2003-00557 en el cual solicitaron la revisión de la resolución emitida por la Junta de Planificación el 27 de junio de 2003. Formularon los siguientes señalamientos de error:

*"1. erró la JP al aprobar la consulta de ubicación sin que antes el proponente haya sometido el estudio hidrológico-hidráulico requerido por el Reglamento sobre Zonas Susceptibles a Inundaciones.*

*2. erró la JP al conceder variaciones reglamentarias en violación al Reglamento de Zonificación y la jurisprudencia aplicable.*

*3. erró la JP al aprobar la Consulta de Ubicación sin haber celebrado las vistas públicas requeridas por el Reglamento de Zonificación.*

*4. erró la JP al aprobar la Consulta de ubicación sin tener el endoso del Instituto de Cultura Puertorriqueña.* ▮

*5. erró la JP al aprobar la Consulta de Ubicación y emitir una Resolución con condiciones diferentes a las que aparecen en el plano del proyecto aprobado junto a la misma consulta de ubicación."*

El 10 de diciembre de 2003, le ordenamos al Procurador General que se expresara en torno a las siguientes cuestiones: (1) moción de desestimación y objeción a la misma; (2) si el caso de título debe ser consolidado con el caso KLRA-2003-00557; (3) cuál es la facultad del Tribunal de Apelaciones para revisar los endosos de las agencias administrativas en un caso ante el Departamento de Recursos Naturales y Ambientales; (4) solicitud de traslado a la Región Judicial de Aguadilla y Mayagüez.

El Procurador General de Puerto Rico compareció ante nos en representación de Recursos Naturales y, entre otros asuntos, expresó lo siguiente:

*"...valga advertir que en el presente caso los comentarios notificados por el DRNA incluían la descripción de un plano de deslinde de la zona marítimo-terrestre que fue certificado por la agencia compareciente. Es necesario reconocer que dicho plano fue aprobado sin notificar a los dueños de los predios colindantes (Artículo 3.1 del Reglamento 4860). Por ello, la consulta de ubicación aprobada adolece de esta deficiencia. Ante esta realidad, procede se devuelva el caso a la Junta de Planificación a los fines de que el DRNA inicie el procedimiento de deslinde de la zona marítimo-terrestre y, de ser procedente, proceda a certificar el plano, conforme a lo dispuesto en el Reglamento 4860 del Departamento de Recursos Naturales y Ambientales."* (Énfasis nuestro.)

Calrincón se opuso a los argumentos esbozados por el Procurador General.

Los recurrentes presentaron dos mociones en las que nos solicitaron la paralización de los procedimientos, las cuales fueron declaradas sin lugar.

El 24 de marzo de 2004, le concedimos término a la Junta de Planificación para que expusiera su posición frente al recurso y señalamos una vista oral. La Junta de Planificación compareció y avaló la posición asumida por el Procurador General, por lo que solicitó que se le devolviera el caso.

El 21 de abril de 2004 se celebró la vista oral, a la cual comparecieron los representantes legales de los recurrentes, Calrincón, la Junta de Planificación, Recursos Naturales y Calidad Ambiental. En esa misma fecha ordenamos la consolidación de los recursos KLRA-2003-00320 y KLRA-2003-00557. ■

Examinados los escritos de las partes, así como las argumentaciones vertidas en la vista oral, los documentos obrantes en el expediente ante nos, la ley, los reglamentos y la jurisprudencia aplicable, estamos en posición de resolver.

## II

Antes de discutir los méritos del caso de autos, es importante precisar cuál es el ámbito y los límites de la revisión judicial de las decisiones de las agencias administrativas.

Nuestro Tribunal Supremo ha establecido reiteradamente que las determinaciones de los organismos administrativos especializados merecen gran consideración y respeto. *Mun. de San Juan v. J.C.A.,* 152 D.P.R. ___ (2000), **2000 J.T.S. 193**; *Misión Ind. P.R. v. J.C.A.,* 145 D.P.R. 908 (1998); *Metropolitana, S.E. v. A.R.P. E.,* 138 D.P.R. 200 (1995); *Asoc. Drs. Med. Cui. Salud v. Morales,* 134 D.P.R. 567 (1993).

La Ley 170 de 12 de agosto de 1988, conocida como la Ley de Procedimiento Administrativo Uniforme, en su sección 4.5, 3 L.P.R.A. sec. 2175, establece los límites de la revisión judicial de decisiones administrativas y dispone que las determinaciones de hechos de las agencias serán sostenidas por el Tribunal si se basan en evidencia sustancial que obre en el expediente administrativo. Por lo tanto, estamos obligados a sostener tales determinaciones si están respaldadas por evidencia suficiente que surja del expediente administrativo considerado en su totalidad. *Misión Industrial P.R. v. J.C.A., supra; Facultad de Ciencias Sociales v. Consejo de Educación Superior,* 133 D.P.R. 521 (1993).

No obstante, las conclusiones de derecho de los organismos administrativos que no involucren interpretaciones efectuadas dentro del ámbito de especialización de la agencia concernida, son revisables en toda su extensión. *Rivera v. A & C Development Corp.,* 144 D.P.R. 450 (1997). Como regla general, los tribunales deben conceder gran peso y deferencia a las interpretaciones que la agencia administrativa hace de aquellas leyes particulares que le corresponde poner en vigor. *A.A.A. v. Unión de Abogados,* ___ D.P.R. ___ (2002), **2002 J.T.S. 155**; *Calderón v. Adm. Sistemas de Retiro,* 129 D.P.R. 1020 (1992); **pero aun esta deferencia judicial al "*expertise*" administrativo cede ante una actuación irrazonable o ilegal.** *T-JAC; Inc. v. Caguas Centrum Limited,* 148 DPR 70 (1999).

En resumen, la revisión judicial de las determinaciones administrativas está limitada a determinar si la actuación administrativa fue razonable y cónsona con el propósito legislativo o si por el contrario fue irrazonable, ilegal o si medió abuso de discreción. *T-JAC; Inc. v. Caguas Centrum Limited, supra; Rivera v. A & C Development Corp., supra; Agosto v. Fondo del Seguro del Estado,* 132 D.P.R 866 (1993).

Con estos principios en mente, pasamos a resolver los señalamientos de error formulados por los recurrentes.

## III

Los recurrentes sostienen que toda vez que la Junta de Planificación incumplió con varias disposiciones legales y reglamentarias aplicables, procede decretar la nulidad de la consulta de ubicación aprobada.

El Artículo VI, Sección 19 de nuestra Constitución dispone que:

*"Será política pública del Estado Libre Asociado la más eficaz conservación de sus recursos naturales, así como el mayor desarrollo y aprovechamiento de los mismos para el beneficio general de la comunidad."*

Recientemente, nuestro Tribunal Supremo señaló en *Misión Ind. de P.R. v. J.C.A., supra*, que:

*"Esta disposición no es la expresión de un insigne afán, ni constituye tampoco sólo la declaración de un principio general de carácter exhortativo. **Se trata, más bien, de un mandato que debe observarse rigurosamente, y que prevalece sobre cualquier estatuto, reglamento u ordenanza que sea contraria a éste.***

...

*Conforme a este claro historial constitucional, en Puerto Rico, cualquier decisión o determinación del Estado que incida sobre los recursos naturales debe responder cabalmente al doble mandato de la Sección 19 de lograr la más eficaz conservación de los recursos naturales, a la vez que se procura el mayor desarrollo y aprovechamiento de esos recursos para el beneficio general de la comunidad. Dicha Sección fija de modo incuestionable el criterio jurídico primordial para juzgar la validez o interpretar el significado de cualquier norma o decisión relativa al uso o protección de los recursos naturales formulada por la Asamblea Legislativa o por cualquier agencia, departamento, municipio o instrumentalidad gubernamental."* (Énfasis nuestro.)

La Junta de Planificación es el organismo gubernamental creado con el propósito de desarrollar los recursos humanos, económicos, ambientales y físicos de forma coordinada para crear las condiciones necesarias que propendan al desarrollo integral de la sociedad. 23 L.P.R.A. § 62c. Su creación obedece a la necesidad de velar por la ordenada y adecuada utilización de nuestros escasos terrenos y recursos naturales. Art. VI, Sec. 19, Const. E.L.A., L.P.R.A. Tomo 1. La Junta debe ejercer sus funciones en cumplimiento con la política pública del Estado Libre Asociado de *"fomentar la participación de la ciudadanía en el proceso de planificación de Puerto Rico"*. 23 L.P.R.A. sec. 62v(a).

Al amparo de las facultadas delegadas por la ley que la creó, la Junta aprobó el Reglamento de Zonificación de Puerto Rico, mejor conocido como el Reglamento de Planificación Núm. 4, el cual tiene como propósito guiar y controlar el uso y desarrollo de los terrenos con el fin de contribuir a la seguridad, el orden, la convivencia, la solidez económica y el bienestar general de los actuales y futuros habitantes de Puerto Rico. Véase, *T-JAC, Inc. v. Caguas Centrum Limited, supra.* ■

Para evadir la rigidez del esquema de zonificación, el Reglamento Núm. 4 establece el procedimiento de la consulta de ubicación. El mismo constituye una solicitud para que la Junta *"evalúe, pase juicio y tome la determinación que estime pertinente sobre propuestos usos de terrenos que no son permitidos ministerialmente por la reglamentación aplicable en áreas zonificadas, pero que las disposiciones reglamentarias proveen para que se consideren"*. Sección 2.01 del Reglamento Núm. 4. Véase, además, Sección 2.00(7) del Reglamento Núm. 6031 de la Junta de Planificación, aprobado el 12 de noviembre de 1999, conocido como el Reglamento de Procedimientos Adjudicativos de la Junta de Planificación, en lo sucesivo Reglamento Núm. 6031. La consulta de ubicación se identificará como pública o privada dependiendo de quién la origine e incluye los proyectos de desarrollos extensos a considerarse bajo las disposiciones del Reglamento Núm. 4. *Id.*

La Junta tiene gran discreción en el ejercicio de su facultad de evaluar las consultas de ubicación; sin embargo, está sujeta al cumplimiento de las normas y requisitos establecidos en la ley y en la jurisprudencia. *Mun. de San Juan v. Bosque Real*, 158 D.P.R. ___ (2003), **2003 J.T.S. 33**; *T-JAC, Inc. v. Caguas Centrum Limited, supra.*

En la Sección 7.01 del Reglamento Núm. 6031 se establece que la Junta de Planificación, en el proceso de evaluación, tramitación y disposición de la consulta de ubicación, **consultará, cuando lo considere necesario, a cualesquiera de los organismos gubernamentales, comisiones locales de planificación y otras entidades públicas y privadas, que de alguna manera tengan relación con los proyectos bajo estudio** y se le requiere a las partes consultadas que notifiquen copia de sus comentarios a la parte proponente y a las opositoras para que éstas puedan responder a los mismos.

## IV

El caso de autos trata de una consulta de ubicación de un desarrollo residencial extenso que se intenta llevar a cabo en una finca ubicada en un distrito residencial RT-1. La Sección 2.01 del Reglamento de Planificación Núm. 4 define desarrollo extenso como aquél que:

*"[c]omprende los desarrollos residenciales para veinte (20) o más familias o solares en pueblos o áreas con una población urbana censal menor de diez mil (10,000) personas; treinta (30) o más familias o solares en pueblos o áreas con una población urbana censal entre diez mil (10,000) a cuarenta mil (40,000) personas y cuarenta (40) o más familias o solares en pueblos o áreas con una población urbana censal sobre cuarenta mil (40,000) personas, conforme a los resultados del último censo poblacional."*

La Sección 79.00 del Reglamento de Planificación Núm. 4 regula lo relativo a los proyectos de desarrollos extensos y tiene el propósito de identificar, para conocimiento general, aquellos proyectos de desarrollos extensos que pueden ser considerados al amparo de las disposiciones de este Reglamento; sin que se considere variación a las disposiciones aplicables de este Reglamento. Sección 79.02. La determinación que se tome sobre un proyecto de desarrollo extenso descansará en la evaluación de factores que presente y demuestre la parte interesada en el caso a base, pero sin limitarse a, los siguientes factores: conformidad del uso propuesto y su intensidad con el Plan de Usos de Terrenos; disponibilidad, programación y mejoras propuestas por el proyecto a la infraestructura del sector; y la forma en que el proyecto propiciaría el desarrollo integral del sector y mantendría las mejoras existentes. Sección 79.03 del Reglamento Núm. 4.

La Sección 81.00 se refiere a desarrollos extensos evaluados por la Junta de Planificación. En la Sección 81.01 se dispone que se podrán someter ante la Junta de Planificación cualquiera de los tipos de proyectos que se indican en dicha sección, solos o combinados, independientemente del distrito en que se propongan. Sin embargo, nuestro Tribunal Supremo ha interpretado que esta disposición no exime a la Junta de Planificación de observar los procedimientos establecidos y promulgados por esa misma agencia para la aprobación y consideración de tales proyectos y que dicha disposición reglamentaria hay que considerarla en conjunto con el total del cuerpo reglamentario. Véase, *T-JAC, Inc. v. Caguas Centrum Limited, supra*, a la pág. 88.

La Junta de Planificación podrá considerar proyectos de desarrollos residenciales extensos de acuerdo con los siguientes requisitos:

*"1. Los terrenos en los cuales se propone la urbanización estarán adyacentes o dentro del ámbito de expansión urbana del municipio correspondiente, dentro de una zona de interés turístico o un área desarrollada. La Junta podrá considerar este tipo de desarrollo fuera del área de expansión urbana, cuando se demuestre que exista o pueda proveerse la infraestructura necesaria para servir el proyecto.*

*2. La densidad propuesta alcanzará los mínimos y no excederá los máximos establecidos en el Plan de Usos de Terrenos vigentes.*

*3. Se celebrará vista pública con notificación a los dueños de los terrenos circundantes cuando el desarrollo residencial extenso tenga acceso a una calle municipal con un rodaje menor de 8.00 metros y por la cual accesen más de diez (10) estructuras residenciales en una distancia de doscientos cincuenta (250)*

*metros, medidos desde las entradas al proyecto.*

*4. Si la infraestructura necesaria para atender las necesidades del proyecto propuesto y para mitigar sus efectos directos e indirectos está disponible o puede proveerse.*

*5. El proyecto podrá incluir el desarrollo de una o más estructuras principales en un mismo solar si se propone segregar el mismo.*

*6. Se podrá dispensar de los requerimientos de este Reglamento cuando se trate de desarrollos para vivienda de interés social y las circunstancias así lo justifiquen."* (Énfasis nuestro.) Sección 81.02 del Reglamento Núm. 4.

Uno de los fundamentos en que se apoya la parte recurrente para solicitar que se decrete la nulidad de la consulta de ubicación aprobada por la Junta de Planificación es el relativo a que no se celebró la vista pública que se establece en la Sección 81.02(3) del Reglamento Núm. 4. Los recurrentes aducen que el desarrollo residencial extenso propuesto tiene acceso a una calle municipal con un rodaje menor de 8.00 metros, por la cual accesan más de diez (10) estructuras residenciales en una distancia de doscientos cincuenta (250) metros medidos desde la entrada del proyecto.

Por su parte, Calrincón no discutió esa cuestión en los escritos que presentó ante nos, sino que se limitó a señalar que el proyecto propuesto tiene acceso a través de una carretera estatal. En la vista oral celebrada ante este Foro, Calrincón aceptó la existencia del acceso a la carretera municipal, pero alegó que no aplica la referida disposición reglamentaria, puesto que el ancho de la carretera va a aumentar a 13 metros luego de la construcción. El argumento esbozado por Calrincón es frívolo de su faz y no la exime del requisito de la celebración de la vista pública.

En lo que respecta al análisis de la Sección 81.02(3) del Reglamento Núm. 4, nuestro más Alto Foro resolvió en *Ortiz v. J.P.,* 152 D.P.R. ___ (2000), **2000 J.T.S. 151**, que:

*"[E]ste inciso del Reglamento de Zonificación, en relación a proyectos de desarrollo residencial extenso, establece dos (2) circunstancias en las cuales es mandatorio que la Junta celebre vistas públicas con notificación a los dueños de terrenos circundantes. La primera es cuando el proyecto tenga acceso a una calle municipal bajo las condiciones allí descritas. Y, la segunda, que es de aplicación al caso de autos, siempre que la densidad propuesta sea mayor que la del área circundante. Esta interpretación no sólo le insufla vida a la política pública de 'fomentar la participación de la ciudadanía en el proceso de planificación' esbozada por la propia Ley Orgánica de la Junta de Planificación de Puerto Rico, sino que establece un balance entre el poder del Estado para velar por la adecuada utilización de los terrenos y el derecho de los ciudadanos al libre disfrute de sus propiedades. Además fomenta la confianza del Pueblo en que las zonificaciones donde tienen sus hogares no serán alteradas a sus espaldas y sin brindarles la oportunidad de que los funcionarios públicos a cargo del proceso tomen en consideración sus puntos de vista."* (Énfasis suplido y citas omitidas.)

En *Mun. de San Juan v. Bosque Real, supra,* nuestro más Alto Foro expresó lo siguiente en lo que respecta a la aprobación de una consulta de ubicación de un desarrollo extenso sin la celebración de vista pública:

*"Hoy, los fines de la justicia y el interés de proteger el medio ambiente y la pureza en los procesos de planificación urbana nos urgen a adjudicar una controversia sobre la validez de una consulta de ubicación que a todas luces fue aprobada mediante un procedimiento viciado y carente del indispensable requisito de la participación de los principales afectados con la construcción."*

Ciertamente, dicha disposición reglamentaria reviste extraordinaria importancia en los procesos que se llevan a cabo ante la Junta de Planificación. La celebración de la vista pública en casos como el de autos -en que el

proyecto tiene acceso a una calle municipal con las circunstancias ya establecidas-, es mandatoria. El claro incumplimiento con los requisitos señalados tiene el alcance de convertir **en nula e ilegal la consulta de ubicación mediante la cual fue aprobado el proyecto.** ■

La actuación de la Junta de Planificación es ilegal y, por ello, intervenimos con la misma. Procede, pues, devolver el caso a la Junta de Planificación para la celebración de la vista correspondiente y se cumpla con el requisito indispensable de permitirle participar a los principales afectados con la construcción.

## V

Ya hemos expuesto que la Junta de Planificación al evaluar las consultas de ubicación está sujeta al cumplimiento de las normas y requisitos establecidos en la ley y en la jurisprudencia y que consultará, cuando lo considere necesario, a cualesquiera de los organismos gubernamentales, comisiones locales de planificación y otras entidades públicas y privadas, que de alguna manera tengan relación con los proyectos bajo estudio.

Los recurrentes solicitan, además, que se decrete la nulidad de la consulta de ubicación por el fundamento de que Recursos Naturales endosó el plano de mensura en el que se certificó la zona marítimo-terrestre sin haber seguido el procedimiento de deslinde establecido en el Reglamento Núm. 4860.

Recursos Naturales compareció ante nos y reconoce dicho error al señalar que *"en el presente caso, los comentarios notificados por el DRNA incluían la descripción de un plano de deslinde de la zona marítimo-terrestre que fue certificado por la agencia compareciente. Es necesario reconocer que dicho plano fue aprobado sin notificar a los dueños de los predios colindantes (Artículo 3.1 del Reglamento 4860)".* A esos efectos, Recursos Naturales solicita que se devuelva el caso a la Junta de Planificación a los fines de que el DRNA inicie el procedimiento de deslinde de la zona marítimo-terrestre. La Junta de Planificación también accedió a tal solicitud.

La Sección 24.06 del Reglamento de Zonificación de la Zona Costanera y de Accesos a las Playas y Costa de Puerto Rico, conocido como el Reglamento de Planificación Núm. 17, con vigencia de 29 de noviembre de 1986, en adelante Reglamento Núm. 17, dispone lo siguiente:

*"Todo proyecto dentro de la zona costanera de Puerto Rico y especialmente aquellos colindantes con la zona marítimo-terrestre o con un recurso natural a preservarse, **necesitará para su evaluación, de los comentarios del Departamento de Recursos Naturales. Tales comentarios serán solicitados por la Junta en la etapa de consulta de ubicación y uso de terrenos** o por la ARPE cuando no se requiera la tramitación de una consulta de ubicación. El Departamento de Recursos Naturales deberá contestar dentro del término establecido por la Junta y si transcurrido este término no se recibe contestación, se entenderá que dicho Departamento no tiene comentarios sobre el proyecto. Véase, además, la Sección 85.02 del Reglamento Núm. 4."*

En la Sección 86.02 del Reglamento Núm. 4 se establece lo siguiente:

*"86.02 – Delimitación de la Zona Marítimo-terrestre- Todo proyecto propuesto en terrenos colindantes con la zona marítimo-terrestre deberá someter a la Junta o a A.R.P.E., según corresponda, junto con los otros documentos y requisitos, **un plano de mensura, debidamente certificado por el Departamento de Recursos Naturales, en el cual aparezca deslindado el límite marítimo-terrestre.** Esta certificación delimitando la zona marítimo–terrestre tendrá un (1) año de vigencia y no se entenderá que conceda derechos de propiedad permanentes y sí que representa el límite de ésta en la fecha del plano, el cual podrá variar cuando la naturaleza altere el contorno de la costa o playa."*

*El Departamento de Recursos Naturales y Ambientales es la entidad encargada de implantar la fase operacional de la política pública establecida en nuestra Constitución en lo que respecta a la protección de*

*nuestros recursos naturales. Véase, Artículo 3 de la Ley Núm. 23 de 20 de junio de 1972, conocida como la Ley Orgánica del Departamento de Recursos Naturales, 3 L.P.R.A. sec. 153. El Secretario de Recursos Naturales 'tendrá a su cargo el estudio y control de las inundaciones; la vigilancia, conservación y limpieza de las playas; el control de la extracción de arena y grava en las playas; el deslinde y saneamiento de la zona marítimo-terrestre, y la vigilancia y atención de los manglares pertenecientes al Estado Libre Asociado de Puerto Rico'."* 12 L.P.R.A. sec. 1202. (Énfasis nuestro.)

En cumplimiento con los deberes impuestos por ley, Recursos Naturales adoptó el Reglamento para el Aprovechamiento, Vigilancia, Conservación y Administración de las Aguas Territoriales, los Terrenos Sumergidos y la Zona Marítimo-terrestre, Reglamento Núm. 4860 de 30 de diciembre de 1992, en lo sucesivo el Reglamento Núm. 4860. En el Artículo 2.33 del Reglamento se define deslinde como la *"actividad mediante la cual se determinan los límites entre uno o más inmuebles colindantes con el dominio público marítimo-terrestre".* El Artículo 3 del Reglamento regula lo relativo al procedimiento de deslinde de la zona marítimo-terrestre. El Artículo 3.1 lee como sigue:

*"A. Para la determinación del límite, tierra adentro, del dominio público marítimo-terrestre, el Departamento, discrecionalmente, practicará o requerirá que se practique el deslinde de la zona marítimo-terrestre. Dicho deslinde se incoará de oficio o a petición de la persona interesada y será certificado correcto por el Secretario del Departamento.*

*B. Todo peticionario, y en caso de deslindes incoados de oficio, el Departamento, **notificará mediante carta certificada con acuse de recibo a los propietarios colindantes y al municipio correspondiente sobre el inicio del proceso de deslinde."***

Procede, pues, devolver el caso a la Junta de Planificación para que le ordene a Recursos Naturales que inicie el procedimiento de deslinde de la zona marítimo-terrestre en cumplimiento con el Artículo 3.1 del Reglamento Núm. 4860. Como ya expusimos, tanto Recurso Naturales como la Junta de Planificación están de acuerdo con lo anterior.

Es sabido lo reiterado en *Magríz v. Empresas Nativas*, 143 D.P.R. 63 (1997), que:

*"...un error administrativo no crea un estado de derecho que obligue a la agencia ni impide su corrección. Una parte no puede pretender ampararse en una actuación administrativa incorrecta o ilegal."* ■■■

## VI

Debido al resultado al que llegamos en la presente sentencia, entendemos que resulta innecesario discutir los restantes señalamientos de error levantados por los recurrentes.

Procede, entonces, devolverle el caso a la Junta de Planificación para que celebre la vista pública requerida para la consideración de desarrollos extensos en la que se le brinde oportunidad a los recurrentes de presentar todas las objeciones que tienen al proyecto objeto de la consulta de ubicación. La Junta de Planificación deberá ordenarle, además, a Recursos Naturales que inicie el procedimiento de deslinde de conformidad con lo establecido en el Reglamento Núm. 4860.

Es preciso añadir —como nota cautelar— que la Junta de Planificación al reevaluar la consulta de ubicación debe tomar en consideración los demás planteamientos señalados por los recurrentes, entre los que destacamos los siguientes: si la acción propuesta conllevará un impacto ambiental significativo o no significativo; si era necesaria la preparación de una Declaración de Impacto Ambiental (DIA); si era necesario que se sometiera el estudio hidrológico-hidráulico requerido por el Reglamento de Planificación Núm. 13 para desarrollos que ubiquen en zonas susceptibles a inundaciones en las cuales se desconozca el nivel de inundación base; y si se incumplieron

las disposiciones establecidas en las secciones 85.07, 85.11, 85.12 del Reglamento de Planificación Núm. 4.

## VII

Por los fundamentos antes expuestos, en el caso KLRA-2003-00320, expedimos el auto solicitado y devolvemos el caso al foro de origen para la continuación de los procedimientos de forma compatible con lo aquí expresado. Además, según expuesto en el texto de la sentencia, se desestima el recurso KLRA-2003-00557 por ser el mismo académico.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 2004 DTA 108

**1.** Entre éstos mencionó los siguientes: Reglamento sobre Zonas Susceptibles a Inundaciones (Reglamento de Planificación Núm. 13) por estar el proyecto ubicado en Zona II o 1M; Reglamento de Planificación Núm. 25 sobre siembra, corte y reforestación; Reglamento de Planificación Núm. 3; y Reglamento Núm. 17 de Planificación (Reglamento de Zonificación de la Zona Costanera y de Accesos a las Playas y Costas de Puerto Rico).

**2.** No procede la desestimación del recurso KLRA-2003-00320 por prematuro. Los recurrentes presentaron la solicitud de reconsideración ante la Junta de Planificación oportunamente. El 14 de abril de 2003, la Junta de Planificación consideró la moción de reconsideración, pero no se le notificó a las partes hasta el 14 de mayo de 2003, cuando ya los recurrentes habían presentado el recurso KLRA-2003-00320 ante este Foro.

En *Caro Ortiz v. Cardona Rivera*, 158 D.P.R. ___ (2003), **2003 J.T.S.** 13, el Tribunal Supremo de Puerto Rico tuvo la oportunidad de analizar una situación similar a la aquí planteada, aunque se trataba de un caso civil y no de una revisión administrativa. Allí, nuestro más Alto Foro resolvió, en lo pertinente, lo siguiente:

*"...para que la consideración de una moción de reconsideración tenga el efecto de interrumpir el término jurisdiccional para recurrir en alzada, es necesario, no solamente que el tribunal la considere antes de que transcurra el término para recurrir en alzada o que una de las partes haya presentado un recurso en el foro apelativo, sino que es necesario que esta determinación se notifique también antes de que hayan ocurrido estos eventos procesales."* (Énfasis nuestro.)

Entendemos que lo allí resuelto aplica por analogía al caso de autos. El término para acudir ante nos empezó a decursar luego de expirado el término de 15 días desde que se presentó la solicitud de reconsideración, o sea, el 17 de abril de 2003. Toda vez que el recurso KLRA-2003-00320 fue presentado el 8 de mayo de 2003, antes de que la Junta de Planificación le hubiera notificado a las partes que iba a considerar la solicitud de reconsideración, es preciso concluir que la moción de reconsideración presentada por los recurrentes no interrumpió el término para acudir ante nos y no procede la desestimación del recurso KLRA-2003-00320 por prematuro.

Por el mismo razonamiento antes expuesto, procede la desestimación del recurso KLRA-2003-00557, habida cuenta que la Junta de Planificación —desde el 8 de mayo de 2003—, perdió jurisdicción para resolver la moción de reconsideración presentada por los recurrentes.

**3.** La solicitud hecha por Calrincón a los efectos de que procedía la desestimación del recurso por no haber notificado la presentación del mismo a las partes con interés en el pleito no procede. Si bien de la resolución recurrida se desprende que la misma fue notificada a las tres personas antes mencionadas, los recurrentes nos informaron que éstos —los señores Torres, Medina y Bonilla—, nunca recibieron copia de la referida resolución, pues las direcciones que obraban en récord —las cuales fueron provistas por Calrincón—, no eran correctas. Los recurrentes acompañaron prueba indicativa de lo anterior. La notificación a las referidas partes hubiese constituido un ejercicio fútil.

Los recurrentes también argumentan que estas tres personas no fueron parte del procedimiento ante la Junta de Planificación, Concurrimos con tal postura. Los nombres de éstos sólo aparecen en el expediente en un formulario sometido

274

por Calrincón a la Junta de Planificación en la que se certifica quiénes son los colindantes del proyecto en cuestión con sus respectivas direcciones. No hay nada que indique cuál fue la participación de éstos —si alguna— en el procedimiento ante la Junta de Planificación.

Por tanto, es preciso concluir que no procede la desestimación del recurso por dicho fundamento. Tampoco era necesario notificar a la A.R.P.E., pues dicha agencia no es la agencia recurrida ni era parte en el procedimiento ante la Junta de Planificación.

De otra parte, debemos aclarar que sólo la resolución emitida por la Junta de Planificación es revisable ante nos. Los comentarios y/o endosos emitidos por las distintas agencias administrativas como parte del proceso de la consulta de ubicación no son revisables directamente ante este Foro. Ahora bien, lo anterior no impide que este Foro, al revisar la resolución emitida por la Junta de Planificación, examine la misma en su totalidad, incluyendo —claro está— los comentarios y/o endosos emitidos de las distintas agencias considerados por la Junta de Planificación. Como cuestión de hecho, asimismo lo reconocen los propios recurrentes mediante moción informativa radicada ante este Foro el 13 de agosto de 2003.

**4.** Originalmente, comparecieron como recurrentes en el recurso de epígrafe la Asociación de Residentes de Rincón, David Wishinsky y Carlos Gastón, en su carácter personal y como miembros de la Asociación de Residentes de Rincón. Posteriormente, y ante la solicitud de desestimación presentada por una de las partes respecto a la Asociación de Residentes de Rincón, dicha parte reconoció que no tenía legitimación activa para comparecer como parte en el presente recurso. No obstante, se alegó que los señores David Wishinsky y Carlos Gastón sí tenían legitimación activa para ello, por ser residentes del Municipio de Rincón, utilizar las facilidades que se verían afectadas por el proyecto objeto de la consulta de ubicación, porque se verían afectados los servicios de acueductos y alcantarillados que reciben, y en específico, se indicó que el Sr. Wishinsky era dueño y residente de una propiedad que colinda con el proyecto en controversia.

Resulta claro, pues, que los señores Wishinsky y Gastón tienen legitimación activa para comparecer ante este Foro. Como cuestión de hecho, el Sr. Wishinsky fue aceptado como interventor ante la Junta de Planificación. No procede la desestimación del recurso por dicho fundamento. En lo sucesivo, nos referiremos a éstos conjuntamente como los recurrentes.

**5.** Tampoco procede el traslado solicitado. La Regla 60 del Reglamento del Tribunal de Circuito de Apelaciones, vigente al momento de radicarse el presente recurso, 4 L.P.R.A. Ap. XXII, R. 60, y el Reglamento Transitorio del Tribunal de Apelaciones, establece que el recurso de revisión administrativa será atendido por el Circuito de Apelaciones correspondiente a la región judicial donde *"se planee, se esté llevando o se haya llevado a cabo la actividad o incidente que hubiera dado lugar la controversia"*.

En el caso de autos, todo el trámite relacionado con el proyecto en cuestión se ha realizado en San Juan por la Junta de Planificación, habida cuenta que aún nos encontramos en la etapa inicial relacionada con la obtención de los permisos. De manera que no procede el traslado del caso a la región judicial de Aguadilla-Mayagüez.

De todas maneras, la parte recurrente presentó este recurso ante el Circuito Regional de San Juan. Una vez se determina que el recurso fue presentado ante el Tribunal de Circuito de Apelaciones o Tribunal de Apelaciones y que dicho Foro tiene jurisdicción para considerar el mismo, cualquier Panel tiene competencia para resolverlo. Falta de competencia no es falta de jurisdicción.

**6.** Los recurrentes aclararon en la vista oral que dicho error no se había cometido.

**7.** Véase, nota núm. 2.

**8.** El Reglamento Núm. 4 aplicable a la situación de autos es el que tiene fecha de vigencia de 5 de noviembre de 2000.

**9.** A este mismo resultado arribó nuestro Tribunal Supremo en los casos de *Mun. de San Juan v. Bosque Real, supra,* y de *Ortiz v. J.P., supra.*

**10.** Véanse, además, *Director de Inspección Notarías v. Colón,* 131 D.P.R. 102, 112-113 (1992); *Consejo Tit. C. Parkside v.*

*MGIC Fin. Corp.,* 128 D.P.R. 538, 555 (1991); *Arce v. Caribbean Home Const. Corp.,* 108 D.P.R. 225, 258 (1978); *Del Rey v. J.A.C.L.,* 107 D.P.R. 348, 355-356 (1989).