COMMONWEALTH INSURANCE COMPANY, demandante y recurrente, *v.* SALVADOR CASELLAS, ETC., ET AL., demandados y recurridos.

Número: R-74-346     Resuelto: 11 de marzo de 1975

*Rieckehoff, Calderón, Rosa Silva & Vargas,* abogados de la recurrente; *Myriam Naveira de Rodón, Procuradora General,* y *Roberto Armstrong, Jr., Procurador General Auxiliar,* abogados del Secretario de Hacienda.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

El Departamento de Hacienda celebró subastas públicas para la contratación de las fianzas globales de los gobiernos municipales de Puerto Rico y del Estado Libre Asociado. Se adjudicaron a Tidewater International Underwriters, Inc., en representación de Lloyd's of London, el postor más bajo.

La demandante recurrente concurrió también a las subastas. No fue la segunda licitadora más baja, pero alega que las mismas carecen de validez. Interpuso al efecto una acción de *mandamus* e *injunction* para la anulación de las subastas y para impedirle al Secretario de Hacienda que le permita a Lloyd's u otras compañías en situación análoga licitar en el futuro. Se denegó la petición por el Tribunal Superior y se nos solicita por el presente recurso la revisión de este fallo.

El argumento de la recurrente es que Lloyd's es tan solo un asegurador autorizado a suscribir líneas excedentes de acuerdo con el Art. 10.070 del Código de Seguros, 26 L.P.R.A. sec. 1007, (1) por lo que el Estado no tiene facultad para intentar obtener primas más bajas que las establecidas normal-

---

(1) El Art. 10.070 provee: "Cualquier parte o la totalidad de una cubierta de seguro que no pueda obtenerse de aseguradores autorizados, cubierta que en adelante se designará en este título como 'seguros de líneas excedentes', podrá obtenerse de aseguradores no autorizados, siempre que:

(1) El seguro no pueda obtenerse de aseguradores autorizados, o ha

mente. La posición del Estado es que la parte recurrente carece de capacidad para demandar y que, de todos modos, el Art. pertinente es el 12.020(3), 26 L.P.R.A. sec. 1202(3).(²)

■ Respecto al primer planteamiento estimamos que la recurrente está facultada para entablar el presente pleito. Si se considera el mismo, para fines de mayor claridad del análisis, como una petición de sentencia declaratoria, la recurrente es ciertamente, dentro de los términos de la Sec. 2 de la Ley Uniforme de Sentencias Declaratorias, 32 L.P.R.A. sec. 2992, una persona afectada, como compareciente a subastas de este tipo y entidad interesada en futuras licitaciones, por el significado que se le imparta a las disposiciones citadas de la Ley de Seguros. Véanse: *Association of Data Processing Serv. Organizations* v. *Camp*, 397 U.S. 150 (1970); Davis, *The Liberalized Law of Standing*, 37 U. Chi. L. Rev. 450 (1970); *Salas Soler* v. *Srio. de Agricultura*, 102 D.P.R. 716 (1974). Tiene derecho la recurrente a que se dirima la controversia existente entre ella y el Secretario de Hacienda.

En lo que concierne a la segunda cuestión, tanto el historial legislativo como la interpretación contemporánea del

---

sido obtenido hasta el máximo que dichos aseguradores están dispuestos a asegurar; y

(2) Dicho seguro se obtenga mediante un corredor autorizado de seguros de líneas excedentes, en adelante llamado en este capítulo 'corredor', y

(3) El seguro con un asegurador no autorizado no se procure o requiera con el fin de obtener ventajas, bien en cuanto al tipo de primas, o en cuanto a los términos del contrato de seguro; y

(4) El seguro se obtenga de aseguradores no autorizados elegibles con arreglo a la sec. 1007a de este título."

(²) El Art. 12.020(3) dispone en parte: "(3) Seguros que cubran los riesgos del Estado Libre Asociado de Puerto Rico, sus dependencias, entidades, corporaciones, autoridades y municipios. Con relación a estos seguros el Comisionado dictará reglas y reglamentos para establecer las condiciones que mejor protejan el interés público y que garanticen asimismo un trato justo y razonable al asegurador. Por medio de estas reglas y reglamentos el Comisionado podrá autorizar, cuando lo crea necesario o conveniente, que se coticen primas diferentes a las que aparecen fijadas en el Manual de Tarifas."

estatuto, entre otros factores, arrojan luz sobre la relación entre el Art. 12.020 y el 10.070. En su informe de 5 de marzo de 1957 sobre el anteproyecto que luego se convertiría en ley, expresaron las Comisiones de lo Jurídico y de Hacienda de la Cámara de Representantes lo siguiente:

"En el proyecto que recomendamos hay disposiciones que permiten seguros en compañías que no están autorizadas para operar en Puerto Rico. Esta facilidad se ofrece para amparar casos excepcionales, cuando no se puede obtener cubierta en compañías autorizadas a hacer negocios en Puerto Rico o el obtenerlo resultaría, *por lo alto de la prima,* prohibitivo para el asegurado. . . ." (Bastardillas nuestras.) 9 *Diario de Sesiones,* tomo 2, 1957, pág. 562. [3]

Véanse también los informes y manifestaciones en 9 *Diario de Sesiones,* tomo 3, 1957, pág. 1426 y 9 *Diario de Sesiones,* tomo 4, 1957, pág. 1714.

■ Ingrediente importante en la interpretación de estatutos es el clima socioeconómico que impulsa su adopción. A tal efecto es significativo que la práctica de eximir a ciertas agencias al menos de la prohibición de intentar obtener primas más bajas, fuese de aseguradores autorizados o de aseguradores no autorizados del tipo Lloyd's, era conocida en Puerto Rico con anterioridad a la aprobación del actual Código de Seguros. Véase, por ejemplo, el Art. 10 de la Ley Núm. 278 de 5 de abril de 1946. La razón de hecho para aprobar un nuevo Código de Seguros en 1957 parte precisamente de la convicción de que la antigua ley, Ley Núm. 66 de 16 de julio de 1921, según enmendada, era inadecuada a las necesidades de la época. 9 *Diario de Sesiones,* tomo 2, 1957, pág. 561.

Tampoco se desconoce en Estados Unidos la práctica de eximir al estado o a las pólizas obtenidas vía subasta de los

---

[3] El lenguaje actual del Art. 12.020 deriva del Informe de Conferencia de 31 de mayo de 1957, 9 *Diario de Sesiones,* tomo 5, 1957, pág. 2183, pero el anteproyecto original contenía ya las disposiciones centrales de dicho artículo. 8 *Diario de Sesiones,* tomo 2, 1956, pág. 715.

requisitos que impone un artículo como el 10.070 nuestro. 11 Ky. Rev. Stat., 1972, sec. 304.3-260 (5).

▪ La interpretación contemporánea de nuestro Código de Seguros revela, además, que prácticamente a raíz de su aprobación se entendió que los seguros de gobierno pueden contratarse sin sujeción a las normas expuestas en el Art. 10. 070. Véase la opinión del Secretario de Justicia al Secretario de Hacienda de 4 de septiembre de 1959, XXX *Opiniones del Secretario de Justicia,* Núm. 1959–34, donde se discute el problema exacto que aquí se plantea. La interpretación contemporánea de una ley es, por supuesto, factor relevante en su interpretación. Bernier, R. Elfren, *Aprobación e Interpretación de las Leyes en Puerto Rico,* 1963, pág. 223 y ss.; 2A Sutherland *Statutory Construction,* 4th ed., 1973, pág. 238 y ss.; 1 Davis, *Administrative Law Treatise* 324 y ss.

▪ Debemos advertir también que el Art. 10.070 fue enmendado por la Ley Núm. 7 de 30 de agosto de 1961, con pleno conocimiento de la práctica administrativa existente, y que la Asamblea Legislativa no alteró la interpretación consignada en la citada opinión del Secretario de Justicia. Este hecho refuerza considerablemente la interpretación de la intención legislativa consagrada en la práctica existente. Sutherland, *op. cit.,* 256 y ss; *Snyder* v. *Harris,* 394 U.S. 332 (1969).

▪ Razones de orden público favorecen la larga tradición existente en la interpretación de las disposiciones envueltas, lo cual es otro elemento de peso en la determinación de la intención legislativa. *Coll* v. *Picó,* 82 D.P.R. 27, 37 (1960). Nuestro Código autoriza expresamente al Secretario de Hacienda a establecer las condiciones que mejor garanticen el interés público. Puede protegerse el interés general de modo adecuado al mismo tiempo que se autoriza reducir el costo al erario público de los seguros que necesita. En ausencia de una expresión legislativa específica de que el Estado Libre Asociado

no debe gozar de esta valiosa flexibilidad no vemos motivo para alterar la práctica administrativa al respecto.

■ Resolvemos por tanto que el Art. 10.070 del Código de Seguros no limita la facultad del Secretario de Hacienda para intentar obtener primas más bajas de aseguradores de líneas excedentes para cubrir los riesgos del Estado Libre Asociado, sus municipios, autoridades, corporaciones y otras entidades y dependencias públicas bajo el Art. 12.020 (3).

*Se confirmará la sentencia recurrida.*

El Juez Asociado, Señor Angel M. Martín, disiente con opinión.

—O—

Opinión disidente del Juez Asociado Señor Martín.

San Juan, Puerto Rico, a 11 de marzo de 1975

Disiento. El Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 101 *et seq.*, no concede facultad al Secretario de Hacienda para la contratación de los seguros del Estado Libre Asociado con aseguradores no autorizados, [1] bien fuere mediante el procedimiento de subasta o sin ella, excepto en los casos que cumplan con los requisitos del Art. 10.070 del referido Código. 26 L.P.R.A. sec. 1007.

El Art. 10.070 específicamente provee las condiciones que deben regir para obtener seguros de aseguradores no autorizados, cuyos seguros se designan como "seguros de líneas excedentes". Tal disposición es aplicable tanto al público en general como al Estado Libre Asociado. Las dos prohibiciones que son pertinentes a esta opinión son: (1) que el seguro *no* se procure o requiera con el fin de obtener ventajas, bien en cuanto al tipo de primas, o en cuanto a los términos del contrato de seguro, y (2) que el seguro *no* pueda obtenerse de aseguradores autorizados, o ha sido obtenido hasta el má-

---

[1] Para los requisitos para autorización para contratar seguros en Puerto Rico, véase 26 L.P.R.A. sec. 304.

ximo que dichos aseguradores están dispuestos a asegurar. La referida disposición legal no exime de su observancia al Secretario de Hacienda al contratar los seguros del Estado Libre Asociado. Por otro lado prohíbe específicamente que se recurra al asegurador no autorizado para conseguir ventajas en cuanto a las primas o a los términos del contrato. En el caso de autos la única justificación que parece haber utilizado el Secretario de Hacienda fue la de que el asegurador no autorizado a quien se le adjudicó la subasta resultó ser el postor más bajo, lo que precisamente prohíbe el citado Art. 10.070.

La disposición que regula los seguros del Estado Libre Asociado y la función del Secretario de Hacienda respecto a la contratación de los mismos es el Art. 12.020 del Código. 29 L.P.R.A. sec. 1202. Esta provee que el Comisionado de Seguros dictará reglas y reglamentos para establecer las condiciones que mejor protejan al interés público y que garanticen asimismo un trato justo y razonable al asegurador; y especialmente dispone que por medio de las mismas el Comisionado podrá autorizar, cuando lo crea necesario o conveniente, que se coticen primas diferentes a las que aparecen fijadas en el Manual de Tarifas.

A tenor con la mencionada disposición el Comisionado de Seguros solamente reglamentó los contratos de seguros del Estado con el fin de que no se les aplicaran los tipos vigentes inscritos ante el Comisionado, permitiendo así a los aseguradores o sus agentes generales cotizar aquellos tipos que sean los más justos y equitativos tomando en consideración la cuantía del riesgo y los costos razonables de administración y producción, teniendo en cuenta que no habrá intermediarios en la colocación de estos seguros. 26 R.&R.P.R. secs. 204–1501 a 1503. Dicho reglamento no contiene ningún otro criterio referente a la protección del interés público y al trato justo y razonable al asegurador.

Un examen de los Arts. 10.070 y 12.020 del Código y de las disposiciones del reglamento del Comisionado de Seguros

revela su propósito de facultar al Secretario de Hacienda a negociar los seguros del Estado, mediante subasta o sin ella, sin que estuviere obligado por los tipos de primas fijadas en el Manual de Tarifas, esto es, sin restricción de negociar a base de primas más altas o más bajas, pero dentro de las limitaciones del Art. 10.070. Es dentro de la limitada discreción que le confiere el Art. 12.020 que el Secretario puede determinar si el método de subasta es el más apropiado para la mejor protección del interés público y si puede negociar a base de primas diferentes a las que aparecen en el Manual de Tarifas. No tiene facultad otra alguna. Si el legislador hubiere deseado eximirlo de los requisitos del Art. 10.070 muy fácil hubiera sido expresarlo en la ley.

Es meridianamente claro que la intención del legislador fue la de que los riesgos de seguros fueran cubiertos por aseguradores autorizados y que solamente por vía de excepción, o sea, en las circunstancias enumeradas en el Art. 10.070, podría contratarse con aseguradores no autorizados. Por ello se designaron como "seguros de líneas excedentes". Es evidente del texto del Art. 10.070 que solamente en aquellos casos en que el seguro *no pudiere obtenerse* de aseguradores autorizados, en su totalidad o en parte, es que se permite obtener dichos seguros como "líneas excedentes". Aunque el término "seguros de líneas excedentes" no está propiamente definido en la ley puede decirse que en el contexto en que se utiliza en el Art. 10.070 se refiere exclusivamente a aquellos seguros que no puedan ser obtenidos en todo o en parte de aseguradores autorizados. El Secretario de Hacienda no ha demostrado que el seguro *no* puede obtenerse de aseguradores autorizados, o que dichos aseguradores ya ofrecieron el máximo de cubierta disponible, ni que el seguro *no* se está procurando con el fin de obtener ventajas, bien en cuanto al tipo de primas, o en cuanto a los términos del contrato. Es cuando esas condiciones están presentes que el Secretario de Hacienda pue-

de negociar con subasta o sin ella y por primas diferentes a las fijadas en el Manual de Tarifas.

Estamos conscientes de que la obtención de primas más bajas podrían justificar una autorización legislativa para la colocación de los seguros del Estado con aseguradores no autorizados pero no podemos ignorar las consideraciones de política pública que tuvo en cuenta el legislador para limitar la negociación, tanto del Estado como del público en general, con aseguradores no autorizados y exigir expresamente que salvo cuando concurren los requisitos impuestos por el Art. 10.070, los seguros deben colocarse con aseguradores autorizados.

En vista de lo expuesto devolvería el caso al tribunal de instancia para que éste hiciere las determinaciones procedentes en cuanto al cumplimiento por el Secretario de Hacienda con los requisitos del Art. 10.070 del Código de Seguros a los fines de determinar la validez de la adjudicación efectuada en las subastas impugnadas.