EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Comisionado de Seguros de Puerto Rico<br><br>Recurrida<br><br>v.<br><br>Prime Life Partners, Inc.<br><br>Peticionaria | Certiorari<br><br>2004 TSPR 110<br><br>161 DPR \_\_\_\_ |

Número del Caso: CC-2003-576

Fecha: 28 de junio de 2004

Tribunal de Circuito de Apelaciones:

Circuito Regional I

Juez Ponente:

Hon. Carlos Rivera Martínez

Abogado de la Parte Peticionaria:

Lcdo. Ramón A. Cestero

Abogados de la Parte Recurrida:

Lcda. Mercedita Montalvo Acosta
Lcdo. Francisco J. Mercado Olivero

Materia: Informe de Examen del 1 de septiembre de 1998 a 31 de octubre de 2000

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Comisionado de Seguros de
Puerto Rico

    Recurrida

       v.                          CC-2003-576

Prime Life Partners, Inc.

    Peticionaria

Opinión del Tribunal emitida por la Jueza Presidenta Señora NAVEIRA MERLY

San Juan, Puerto Rico a 28 de junio de 2004

       En el recurso ante nos debemos determinar la razonabilidad de unas multas impuestas por el Comisionado de Seguros de Puerto Rico (en adelante Comisionado) a Prime Life Partners, Inc. (en adelante Prime). Por entender que la actuación administrativa fue *ultra vires*, modificamos la penalidad impuesta.

       Examinemos el trasfondo procesal y fáctico de la controversia que nos ocupa.

I

Prime es una corporación que estuvo autorizada por el Comisionado para llevar a cabo negocios como corredor de seguros de líneas excedentes en el Estado Libre Asociado de Puerto Rico desde el 29 de enero de 1997.[1] Conforme a lo dispuesto en el Art. 2.150 del Código de Seguros (en adelante Código), 26 L.P.R.A. sec. 215,[2] el 29 de octubre de 2000 el Comisionado ordenó se investigaran las operaciones y negocios de Prime a los fines de determinar si éstos fueron llevados a cabo a tenor con lo establecido en el Código, el Reglamento de Seguros (en adelante Reglamento) y la Carta Normativa Núm. E-N-12-1275-95 de 9 de enero de 1996. La investigación comprendió el período entre el 1ro de septiembre de 1998 al 31 de octubre de 2000. En ésta se evaluó cada uno de los expedientes de los asegurados bajo contratos de líneas excedentes, declaraciones juradas, los modelos de circulación de riesgos de líneas

---

[1] La corporación cesó en sus operaciones el 30 de junio de 2001. Sin embargo, las personas que estaban autorizadas para actuar a nombre de Prime, el Sr. Joseph L. Carn Álvarez y el Sr. Joseph Carn Jiménez, organizaron otra corporación denominada Prime Quality Marine P & C, Inc., la cual obtuvo licencias de agente de seguros y de corredor de seguros de líneas excedentes el 1 de julio de 2001.

[2] El citado artículo faculta al Comisionado para inspeccionar las cuentas, archivos, documentos, negocios y operaciones relacionadas con seguros de los corredores de seguros de líneas excedentes tan frecuentemente como lo considere prudente. Dicha inspección puede tener el propósito de determinar la situación del corredor, constatar las contribuciones o determinar si ha cumplido con las disposiciones del Código.

excedentes sometidos al Centro de Circulación de Riesgos y los informes anuales de pérdidas de seguros de líneas excedentes. A la luz de la investigación, la examinadora, Sra. Alicia de Jesús Velázquez, presentó un informe en el que hizo a Prime los señalamientos siguientes:

1. De 613 pólizas de seguros de líneas excedentes colocadas para los años 1998, 1999 y 2000, en 568 casos [Prime] comenzó a hacer las gestiones en o antes de la fecha en que circuló los riesgos, en contravención a lo dispuesto en el Artículo 1(a) de la Regla XXVIII del Reglamento del Código de Seguros de Puerto Rico. En 25 casos [Prime] sometió los modelos de circulación al Centro de Circulación con posterioridad a la fecha en que se hicieron efectivas las pólizas.

2. En 260 casos [Prime] colocó el riesgo como seguros de líneas excedentes antes de haber transcurrido el término de cinco (5) días laborables que se establece en el Artículo 2 de la Regla XXVIII del Reglamento del Código de Seguros de Puerto Rico, para que tales riesgos se entiendan rechazados por los asegurados autorizados a los cuales les fueron circulados.

3. En 45 casos [Prime] presentó tanto el pago de la contribución, como el informe requerido en el Artículo 10.130(1) y (2) del Código de Seguros de Puerto Rico, luego de haber transcurrido el término de sesenta (60) días que se establece en el referido Artículo. En tales casos el total de días en atraso fue de 4,888 días. Informe de la Examinadora, 3 de septiembre de 2002, págs. 2-3. (Citas omitidas.)[3]

---

[3] Además, la examinadora señaló que Prime no detalló en el informe anual de pérdidas, requerido por el Art. 10.140(3) del Código, 26 L.P.R.A. sec. 1014(3), los negocios de seguros de líneas excedentes tramitados durante el 1998 y 1999, en contravención a lo

Así las cosas, el 1ro de febrero de 2002 el Comisionado le remitió a Prime una comunicación con copia del informe de examen, apercibiéndola de su derecho a presentar objeciones y solicitar una vista administrativa. Posteriormente, se señaló una vista para el 11 de junio de 2002 y se instruyó a las partes a preparar un informe de conferencia con antelación a ésta. Luego de reunirse, las partes presentaron un informe en el que Prime aceptó las violaciones imputadas y en el que señaló que la vista resultaba innecesaria, por lo que el caso quedó sometido a la luz del expediente administrativo.

El 3 de septiembre de 2002 el Comisionado emitió una resolución en la que determinó que Prime incurrió en las violaciones imputadas e impuso a ésta el pago de las

_____

establecido en la Carta Circular Núm. E-1-1523-99 de 21 de enero de 1999 y la Carta Circular Núm. E-12-1556-99 de 19 de enero de 2000; en noventa (90) casos pagó una cantidad menor por concepto de la contribución de nueve por ciento (9%) establecida en el Art. 10.130(1) del Código, 26 L.P.R.A. sec. 1013(1), quedando a adeudar un total de tres mil veinticinco dólares con veinticuatro centavos ($3,025.24). Por otra arte, en treinta y ocho (38) casos Prime pagó una cantidad total en exceso de setecientos veintiséis dólares con noventa y cuatro centavos ($726.94) por concepto de la misma contribución; en varias notas de cubierta no estampó el texto, o las iniciales, o su nombre, en contravención a lo dispuesto en el Art. 10.090(2) del Código, 26 L.P.R.A. sec. 1009(2); y no mantuvo un expediente de todos los modelos enviados por telefax al Centro de Circulación, ni preparó un registro donde constara el curso que siguió cada riesgo, en contravención a lo dispuesto en la Carta Normativa Núm. E-N-12-1275-95 de 9 de enero de 1996. *Id.*

multas administrativas siguientes: "(1) $28,400 por incumplir en 568 ocasiones con el Artículo 1(a) de la Regla XXVIII; (2) $13,000 por incumplir en 260 ocasiones con el Artículo 2 de la Regla XXVIII; y (3) $122,200 por incurrir en 45 casos en un atraso total de 4,888 días en el pago de la contribución requerida por el Artículo 10.130".[4]    Prime solicitó la reconsideración de la resolución del Comisionado.  Ésta fue denegada.

De esta determinación Prime acudió al Tribunal de Apelaciones y adujo que las multas eran excesivas. Mediante resolución de 8 de mayo de 2003 el foro apelativo intermedio confirmó las penalidades en virtud de la norma de deferencia a las actuaciones administrativas y al resolver que éstas se fundamentaron en evidencia sustancial.

Inconforme, Prime acudió ante nos mediante recurso de *certiorari* y adujo que incidió el Tribunal de Apelaciones:

> ...al confirmar [al Comisionado] determinando que las multas impuestas por [éste] a Prime fueron correctas por lo que 'las mismas se

---

[4] El Comisionado también impuso a Prime las siguientes multas: doscientos cincuenta dólares ($250) por incumplir con la Carta Circular Núm. E-1-1523-99 de 21 de enero de 1999; doscientos cincuenta dólares ($250) por incumplir con la Carta Circular Núm. E-12-1556-99 de 19 de enero de 2000; quinientos dólares ($500) por incurrir en violación al Artículo 10.090(2) del Código, 26 L.P.R.A. sec. 1009; y doscientos cincuenta dólares ($250) por incumplir con la Carta Normativa Núm. E-N-12-1275-95 de 9 de enero de 1996.  Estas penalidades no han sido impugnadas por Prime.  El total de las multas fue de ciento sesenta y cuatro mil ochocientos cincuenta dólares ($164,850).

encuentran dentro de los parámetros establecidos por el Código de Seguros', cuyas multas se impusieron sin considerar los factores atenuantes planteados por Prime, para cancelar o mitigar las mismas.

...al confirmar [al Comisionado], concluyendo que la determinación de [éste] merece la deferencia judicial, cuando, por lo excesivamente onerosas y confiscatorias y/o en contra de la mejor política pública, dichas multas son tan irrazonables e injustas, y sin guardar proporción con las faltas cometidas, que resultan ser castigos crueles y confiscatorios, sino inconstitucionales.

El 24 de febrero de 2004 ordenamos al Comisionado mostrar causa por la cual no deban modificarse las multas impuestas a Prime. Ambas partes han comparecido y con el beneficio de sus argumentos, resolvemos.

II

Por estar relacionados, discutiremos conjuntamente ambos señalamientos de error. En síntesis, debemos determinar la razonabilidad de las multas impuestas a Prime. Ésta alega que el Comisionado no debió imponer las multas mecánicamente, sino que en el ejercicio de su discreción debió tomar en consideración, como atenuante, el hecho de que las faltas no fueron cometidas deliberadamente.

Sabido es que la revisión judicial de las determinaciones administrativas no es ilimitada ya que éstas merecen consideración y respeto. *Asoc. Vec. H. San Jorge v. Med. Corp.*, 150 D.P.R. 70, 75 (2000). A

esos efectos, la Sec. 4.5 de la Ley de Procedimiento Administrativo Uniforme (en adelante L.P.A.U.), 3 L.P.R.A. sec. 2175, establece que las determinaciones de hecho de una agencia serán sostenidas si las mismas están apoyadas en evidencia sustancial que obre en el expediente administrativo. Por otro lado, las conclusiones de derecho que no involucren interpretaciones llevadas a cabo dentro del ámbito de especialización de la agencia serán revisables en toda su extensión. *T-JAC, Inc. v. Caguas Centrum Limited*, 148 D.P.R. 70, 81 (1999).

Entre las actuaciones administrativas sujetas a una revisión judicial limitada se encuentran los procedimientos mediante los cuales una agencia impone penalidades por violaciones a la ley o reglamento cuya implantación le ha sido delegada. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 D.P.R. 425, 441 (1997). Reiteradamente se ha validado la facultad de las agencias para imponer multas o penalidades por las violaciones a las normas que rigen su industria o negocio. *O.E.G. v. Román González*, res. el 1 de mayo de 2003, 159 D.P.R. _____ (2003), 2003 J.T.S. 74, 2003 T.S.P.R. 70.[5] Particularmente, en lo relacionado a la

---

[5] La Sec. 7.1 de la L.P.A.U., 3 L.P.R.A. sec. 2201, dispone que las agencias podrán imponer multas que no excederán de cinco mil dólares ($5,000) por cada violación a las leyes que éstas administran. En aquellos casos donde la ley especial establezca una penalidad mayor a la dispuesta en la Sec. 7.1, *supra*, el

controversia ante nos, el legislador delegó al Comisionado la facultad de velar porque se cumplan estrictamente las normas y principios contenidos en el Código. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., supra*, pág. 442; *Comisionado v. Anglo Porto Rican*, 97 D.P.R. 637, 641 (1969). Cónsono con esta responsabilidad, por disposición de ley, el Comisionado puede imponer multas administrativas por las infracciones al Código o al Reglamento. Arts. 3.211 y 9.480 del Código, 26 L.P.R.A. secs. 321a y 948. De otra parte, hemos reconocido que las agencias gozan de una amplia discreción en lo referente a la imposición de sanciones, pues son éstas las que diariamente implantan la ley orgánica y los reglamentos y son las que, por su conocimiento especializado, están en mejor posición de establecer cuál es el efecto de la violación en el sector reglamentado. *Estado Libre Asociado v. Frogrífico y Almacén del Turabo*, res. el 28 de agosto de 2001, 155 D.P.R. _____ (2001), 2001 J.T.S. 125, 2001 T.S.P.R. 120.

Siempre que la sanción administrativa esté fundamentada en evidencia sustancial, **no constituya una actuación *ultra vires*** y tenga una relación razonable con los actos que se quiere prohibir, los tribunales le brindarán gran deferencia. La revisión judicial de este

---

organismo administrativo está facultado para imponer la sanción mayor.

tipo de actuación administrativa, de ordinario, no depende de si el tribunal considera que la sanción es muy fuerte o no, ya que en la implantación de la ley y en la consecución de los objetivos legislativos es la agencia, y no el tribunal, la que debe determinar cuál es la sanción aplicable a cada situación fáctica. *O.E.G. v. Román González, supra; Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., supra,* pág. 439. **Ahora bien**, **los tribunales tienen la obligación de velar porque la sanción no exceda lo permitido por ley y porque no constituya un claro abuso de discreción.** *Id.*

III

En el recurso ante nos, de entrada es preciso indicar que **Prime no ha cuestionado las faltas imputadas**, sino que las ha admitido. La empresa aduce, no obstante, que las multas son excesivas, por lo que constituyen un abuso de discreción por parte del Comisionado.

La primera multa impugnada consiste en veintiocho mil cuatrocientos dólares ($28,400) por infringir el Art. 1(A) de la Regla XXVIII del Reglamento, 26 R.P.R. sec. 800.1901, ya que en quinientos sesenta y ocho (568) casos el corredor inició las gestiones para colocar el seguro de líneas excedentes antes de circular el riesgo

en cada caso.[6]  Además, en veinticinco (25) casos Prime sometió los modelos de circulación con posterioridad a la fecha en que se hicieron efectivas las pólizas.  En segundo lugar, Prime ha impugnado la multa de trece mil dólares ($13,000) impuesta por infringir el Art. 2 de la Regla XXVIII del Reglamento, 26 R.P.R. sec. 800.1902, ya que colocó los riesgos como seguros de líneas excedentes antes de haber transcurrido el término de cinco (5) días laborables para que se entienda que tales riesgos fueron rechazados por los aseguradores autorizados a los que fueron circulados.

Como indicamos previamente, Prime ha aceptado las violaciones tanto al Código como a su Reglamento.  Ahora bien, entendemos que las multas impuestas por el Comisionado exceden las cantidades permitidas por ley.  Ello en vista de que a los corredores de líneas

---

[6]    Aunque el término "seguros de líneas excedentes" no está propiamente definido en la ley, puede decirse que se refiere a aquellos seguros que no puedan ser obtenidos en todo o en parte de aseguradores autorizados.  Art. 10.070 del Código, 26 L.P.R.A. sec. 1007.  Véase *Commonwealth Ins. Co. v. Casillas*, 103 D.P.R. 539 (1975).  De un examen de las disposiciones referentes a los seguros de líneas excedentes, puede colegirse que este tipo de seguro tiene el propósito de ofrecer protección a aquellos individuos o entidades que por diversas razones están imposibilitados de obtener seguros con aseguradores autorizados, por lo que deben buscar protección en el mercado de seguros de líneas excedentes.  **Una de las protecciones básicas contenidas en el Capítulo X del Código, así como en su Reglamento, es que dicho seguro excedente no puede ser obtenido hasta que se ha determinado que el riesgo no es aceptable para los aseguradores autorizados.**  Véase *Comisionado de Seguros v. Tribunal Superior*, 89 D.P.R. 95 (1963).

excedentes les son aplicables las disposiciones de los Capítulos IX y X del Código, referentes a corredores y a aseguradores no autorizados, respectivamente.[7]  El Art. 9.480(1)(b) del Código, 26 L.P.R.A. sec. 948, establece que a cualquier corredor que infrinja alguna disposición del Código podrá imponérsele una "[m]ulta administrativa que no excederá de quinientos (500) dólares por cada falta; disponiéndose, que **el total de multas impuestas por diferentes faltas no excederá de cinco mil (5,000) dólares"**.[8]  (Énfasis suplido.)

Al imponer las cantidades de veintiocho mil cuatrocientos dólares ($28,400) y trece mil dólares ($13,000) **el Comisionado excedió su facultad para imponer sanciones.**  Ahora bien, tomando en consideración que las referidas multas fueron impuestas porque Prime incumplió en quinientas sesenta y ocho (568) ocasiones con el Art. 1(A) de la Regla XXVIII del Reglamento, *supra*, y por incumplir en doscientas sesenta (260) ocasiones con el Art. 2 de la citada Regla, entendemos

_____

[7]    Un corredor es la persona, sociedad o corporación que por compensación como contratista independiente, en alguna forma, solicita, negocia u obtiene seguros o la renovación o continuación de los mismos, a nombre de los asegurados o asegurados probables que no sea él mismo, y no a nombre de un asegurador o agente.  Art. 9.020 del Código, 26 L.P.R.A. sec. 902.

[8]    Esta disposición también es aplicable a los agentes, solicitadores, ajustadores y consultores de seguros.  En el caso de los aseguradores, la multa no podrá exceder de cinco mil dólares ($5,000) por cada violación y el total no podrá sobrepasar cincuenta mil dólares ($50,000).  Art. 3.211 del Código, 26 L.P.R.A. sec. 321a.

que **debe imponérsele la sanción máxima permitida por ley**. En consecuencia, Prime deberá pagar tres mil setecientos cincuenta dólares ($3,750) de multa, que sumados a los mil doscientos cincuenta dólares ($1,250) impuestos por las otras violaciones que no fueron impugnadas, suman un total de cinco mil dólares ($5,000), la cuantía máxima permitida por el Art. 9.480(1)(b) del Código, *supra*. Es menester puntualizar que la facultad que poseen las agencias para imponer sanciones tiene el propósito, no únicamente de castigar las infracciones a la ley, sino de advertir a la persona que está infringiendo la ley, disuadirla de volver a incurrir en dicha conducta y corregir una situación. *Estado Libre Asociado v. Frigorífico y Almacén del Turabo, supra*.

Finalmente, Prime alega que el Comisionado abusó de su discreción al imponerle una multa de ciento veintidós mil doscientos dólares ($122,200) porque incurrió en un total de cuatro mil ochocientos ochenta y ocho (4,888) días de atraso en el pago de contribuciones de las primas y en la presentación del informe que para fines contributivos se requiere enviar al Comisionado. Art. 10.130 del Código, 26 L.P.R.A. sec. 1013. El citado artículo impone la obligación a los corredores de líneas excedentes de pagar al Secretario de Hacienda una contribución equivalente al nueve por ciento (9%) de la prima total cobrada. Por tratarse de una **obligación**

**contributiva**, el Código impone una **penalidad distinta** a la correspondiente por violaciones a la ley o al Reglamento.   Así, el Art. 10.131, 26 L.P.R.A. sec. 1013a, establece:

> Todo corredor de líneas excedentes que dejare de presentar su informe sobre la cubierta de seguro de líneas excedentes y dejare de pagar la contribución especificada dentro del término establecido en la sec. 1013 de este título, **estará sujeto a una multa administrativa de veinticinco (25) dólares por cada día de atraso**, sujeto al derecho del Comisionado de conceder una prórroga razonable para presentación y pago. (Énfasis suplido.)

De esta forma el legislador determinó la sanción específica a ser impuesta en casos de atraso en el pago de contribuciones, en aras de proteger el interés legítimo del Estado en su política fiscal y de evitar la evasión contributiva.[9]  En estos casos, por disposición expresa de ley, el Comisionado únicamente puede conceder una prórroga razonable para la presentación del informe contributivo y para efectuar el pago.  Resolvemos que actuó correctamente el Comisionado al imponer a Prime veinticinco dólares ($25) de multa por cada día de atraso en el pago de las contribuciones para un total de ciento veintidós mil doscientos dólares ($122,200).

---

[9]    Véase en general *Coro Lugo v. Agosto Alicea*, 130 D.P.R. 1, 16 (1992).   Además, es menester tomar en consideración el interés del Estado en reglamentar una industria tan compleja e importante, como la de seguros. *Maryland Casualty Co. v. San Juan Racing Assoc., Inc.,* 83 D.P.R. 559, 563 (1961).

III

Por los fundamentos antes expuestos, se expide el auto de *certiorari* solicitado y se modifica el dictamen del Tribunal de Apelaciones a los fines de reducir la multa impuesta a Prime por actuar en contravención a los Arts. 1(A) y 2 de la Regla XXVIII del Reglamento, *supra*, a un total de tres mil setecientos cincuenta dólares ($3,750). Se confirma la multa de ciento veintidós mil doscientos dólares ($122,200) por el retraso en el pago de contribuciones y en la presentación del informe contributivo.


MIRIAM NAVEIRA MERLY
Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Comisionado de Seguros de
Puerto Rico

    Recurrida

       v.                              CC-2003-576

Prime Life Partners, Inc.

    Peticionaria


SENTENCIA


San Juan, Puerto Rico a 28 de junio de 2004


       Por los fundamentos expuestos en la Opinión que antecede, se expide el auto de *certiorari* solicitado y se modifica la sentencia emitida por el Tribunal de Apelaciones a los fines de reducir la multa impuesta a Prime Life Partners, Inc. por actuar en contravención a los Arts. 1(A) y 2 de la Regla XXVIII del Reglamento de Seguros a un total de tres mil setecientos cincuenta dólares ($3,750). Se confirma la multa de ciento veintidós mil doscientos dólares ($122,200) por el retraso en el pago de contribuciones y en la presentación del informe contributivo.

       Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Corrada del Río disiente sin opinión escrita. La Jueza Asociada señora Fiol Matta está inhibida. Los Jueces Asociados señores Rebollo López y Rivera Pérez no intervinieron.


                  Patricia Otón Olivieri
              Secretaria del Tribunal Supremo